
# SUPREME COURT OF ARKANSAS
**No.** CV-14-193

| | |
|---|---|
| PHILIP MORRIS COMPANIES, INC., a corporation and PHILIP MORRIS INCORPORATED, a corporation <br> APPELLANTS <br><br> V. <br><br> WAYNE MINER and JAMES EASLEY, individually and on behalf of all others similarly situated <br> APPELLEES | **Opinion Delivered** February 26, 2015 <br><br> APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CV-03-4661] <br><br> HONORABLE TIMOTHY DAVIS FOX, JUDGE <br><br><br> <u>AFFIRMED</u>. |

### RHONDA K. WOOD, Associate Justice

Class certification is proper if six, rule-based prerequisites are satisfied. Two of those prerequisites are at issue in this case: predominance and superiority. Another issue is whether the class is ascertainable. Here, the class plaintiffs alleged that Philip Morris deceived them by advertising Marlboro Lights as being safer and having less tar and nicotine than other cigarettes. The circuit court certified the plaintiffs' class action against Philip Morris based on the Arkansas Deceptive Trade Practices Act; Philip Morris appeals the class certification. Because common issues predominate, because the class-action mechanism is a superior method to adjudicate at least some parts of the plaintiffs' cause of action, and because the class is ascertainable, we affirm the circuit court's order certifying the class.


I.    *Procedural History*

Wayne Miner and James Easley filed a class-action complaint against Philip Morris Companies Inc. and Philip Morris Incorporated. Plaintiffs alleged, on their behalf and for others similarly situated, that Philip Morris violated the Arkansas Deceptive Trade Practices Act (ADTPA)[1] by falsely representing that its Marlboro Lights cigarettes were healthier and contained less tar and nicotine than regular cigarettes. Specifically, plaintiffs allege that Philip Morris violated the ADTPA in the following ways:

- Falsely representing that Lights cigarettes delivered lowered levels of tar and nicotine and were less harmful than regular cigarettes;

- Describing the product as "Light" and having "lowered tar and nicotine" when Lights did not, in fact, lower the tar and nicotine delivered to the consumer;

- Intentionally manipulating the design and content of Lights in order to maximize nicotine and tar delivery when deceptively claiming lowered tar and nicotine; and

- Using techniques that purportedly reduce machine-measured levels of Lights' tar and nicotine content while actually increasing harmful biological effects, like specific constituent toxicity and mutagenicity.

Plaintiffs argued that the circuit court should certify a class to bring the ADTPA claim against Philip Morris. After a hearing, the circuit court agreed with plaintiffs and certified the following class:

> All persons who purchased Defendants' Marlboro Light [or Ultra Light] cigarettes in Arkansas for personal consumption from November 1, 1971, through June 22, 2010. Excluded from the Class are Defendants, any parents, subsidiary, affiliate, or controlled person of Defendants, as well as the officers, directors, agents, servants, or employees of Defendants, and the immediate family members of such persons.

[1]Ark. Code Ann §§ 4-88-101 et seq. (Repl. 2011).



The court concluded, *inter alia*, that common issues among all class members predominated over any individual issues and that a class action was a superior method of resolving the claim. Philip Morris has brought this interlocutory appeal from the circuit court's order certifying the class. *See* Ark. R. App. P.–Civ. 2(a)(9) (2014).

## II.    *Standard of Review and Applicable Law*

The certification of a class action is governed by Arkansas Rule of Civil Procedure 23 (2014). Circuit courts have broad discretion regarding class certification, and we will not reverse a circuit court's decision to grant or deny class certification absent an abuse of discretion. *Union Pac. R.R. v. Vickers,* 2009 Ark. 259, 308 S.W.3d 573. When reviewing a class-certification order, we focus on the evidence contained in the record to determine whether it supports the circuit court's conclusion regarding certification. *Asbury Auto. Grp., Inc. v. Palasack*, 366 Ark. 601, 237 S.W.3d 462 (2006). Our focus is "whether the requirements of Rule 23 are met" and "it is totally immaterial whether the petition will succeed on the merits or even if it states a cause of action." *Am. Abstract & Title Co. v. Rice*, 358 Ark. 1, 9, 186 S.W.3d 705, 710 (2004). Stated another way, we "will not delve into the merits of the underlying claims when deciding whether the Rule 23 requirements have been met." *Nat'l Cash, Inc. v. Loveless*, 361 Ark. 112, 116, 205 S.W.3d 127, 130 (2005).

Rule 23 imposes six prerequisites for certification of a class-action complaint: (1) numerosity; (2) commonality; (3) typicality; (4) adequacy; (5) predominance; and (6) superiority. Ark. R. Civ. P. 23(a), (b); *Asbury Auto., supra*; *Lenders Title Co. v. Chandler*,



358 Ark. 66, 73, 186 S.W.3d 695, 699 (2004). Philip Morris has not challenged the circuit court's ruling regarding numerosity, commonality, typicality, and adequacy, so the only prerequisites at issue are predominance and superiority.[2]

### III.    *Commonality and Predominance*

Although Philip Morris did not challenge the court's finding of commonality in its points on appeal, we discuss commonality here because it is intertwined with predominance. "One or more members of a class may sue or be sued as representative parties on behalf of all only if . . . (2) there are questions of law or fact common to the class." Ark. R. Civ. P. 23(a). Citing to a leading treatise, we have noted that the commonality requirement is satisfied when a single common issue is present among the class members:

> Rule 23(a)(2) does not require that all questions of law or fact raised in the litigation be common. The test or standard for meeting the rule 23(a)(2) prerequisite is . . . that there need be only a single issue common to all members of the class. . . . When the party opposing the class has engaged in some course of conduct that affects a group of persons and gives rise to a cause of action, one or more of the elements of that cause of action will be common to all of the persons affected.

*Williamson v. Sanofi Winthrop Pharmaceuticals, Inc.*, 347 Ark. 89, 96, 60 S.W.3d 428, 432 (2001) (quoting Newberg, Class Actions § 3.10 (3d ed. 1993)). The circuit court must determine what elements in a cause of action are common questions for the purpose of

---

[2]*Cf. Am. Abstract*, 358 Ark. at 9, 186 S.W.3d at 710 ("In this appeal, American challenges only three of the six Rule 23 requirements; therefore, we need not address or consider the other three requirements—numerosity, commonality, and typicality—here.").

SLIP OPINION

certifying a class. *Id.* "The requirement is not difficult to meet." David Newbern et al., *Arkansas Civil Prac. & Proc.* § 8:3 (5th ed. 2010).

In its findings of fact and conclusion of law, the circuit court ruled that the following were common questions of law and fact: (1) whether Philip Morris engaged in an advertising campaign that represented Lights as healthier and/or safer than regular cigarettes; (2) whether Lights are healthier and safer than regular cigarettes; (3) whether plaintiffs received a product that was as warranted and represented; (4) if the product was not as warranted, the difference in value between the product as warranted and delivered; and (5) whether Philip Morris violated the ADTPA with respect to the Lights advertising and marketing programs.

"Predominance is a more stringent requirement than commonality." *United Am. Ins. Co. v. Smith*, 2010 Ark. 468, at 10, 371 S.W.3d 685, 692. Predominance is a shorthand term for the following requirement from Rule 23(b): "An action may be maintained as a class action if . . . the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." The starting point in examining the predominance requirement is whether a common wrong has been alleged against the defendant. *Kersten v. State Farm Mut. Auto. Ins. Co.*, 2013 Ark. 124, 426 S.W.3d 455. We have approved a bifurcated approach to the predominance element by allowing the trial courts to divide the case into two phases: (1) certification for resolution of the preliminary, common issues; and (2) decertification for resolution of the individual issues. *Mega Life & Health Ins. Co. v. Jacola*, 330 Ark. 261, 954

SLIP OPINION

S.W.2d 898 (1997). The predominance element can be satisfied if the preliminary, common issues may be resolved before any individual issues. *Asbury Auto.*, 366 Ark. at 610, 237 S.W.3d at 469.

In making this determination, we do not merely compare the number of individual versus common claims. *Asbury*, *supra*. Instead, we must decide if the issues common to all plaintiffs "predominate over" the individual issues, which can be resolved during the decertified stage of bifurcated proceedings if necessary. *Id.* Conducting a trial on the common issue in a representative fashion can achieve judicial efficiency. *Smith*, 2010 Ark. 468, at 10–11, 371 S.W.3d at 692–93. Thus, the mere fact that individual issues and defenses may be raised regarding the recovery of individual members cannot defeat class certification where there are common questions concerning the defendant's alleged wrongdoing that must be resolved for all class members. *Vickers*, *supra*.

In the instant matter, Philip Morris maintains that each element of plaintiffs' ADTPA claim—misrepresentation, causation, and damages—contains overriding individual issues that destroy predominance. First, Philip Morris argues that misrepresentation is an inherently individual issue because whether its representations on its Lights cigarettes were false depends on each class member's smoking habit. Second, it argues that proof of causation requires proof of reliance, and since each buyer bought Lights for different reasons, these individual reasons destroy predominance. Third, Philip Morris argues that each individual's damage claim depends on his or her smoking habits, which also destroys predominance.



We address these three issues in turn. We conclude that proof of misrepresentation does not turn on each class member's smoking habit because the key inquiry under the ADTPA focuses on the defendant's actions. We further conclude that any individual issues regarding causation and damages can be addressed, if necessary, using the bifurcated approach. And we agree that the circuit court did not abuse its discretion when it reached the same conclusion: "The other issues raised by [Philip Morris] in an attempt to negate predominance are downstream of the common, predominate threshold allegation of the plaintiffs: that Marlboro Lights, as designed, manufactured, advertised, and sold, were misrepresented."

## A.    Misrepresentation

Philip Morris argues that the misrepresentation element of plaintiffs' ADTPA claim can be resolved only by considering each class member's smoking habit. This argument is premised on a phenomenon known as compensation. Compensation, as another court has explained, is "the tendency of smokers of light cigarettes to inhale more deeply, hold the smoke in their lungs longer, or cover up the ventilation holes in the cigarette paper or filter, in order to receive the same amount of tar and nicotine as when smoking Regulars." *Lawrence v. Philip Morris USA, Inc.*, 53 A.3d 525, 529 (N.H. 2012). Philip Morris argues that because some smokers failed to "fully compensate," they actually received less tar and nicotine; therefore, smokers who failed to fully compensate were not deceived. The plaintiffs respond that whether an individual received less tar or nicotine is irrelevant—the issue is Philip Morris's advertising Lights cigarettes as safer, healthier, and



less addictive when, according to plaintiffs, Philip Morris knew those representations were

false.

Here, plaintiffs alleged that Philip Morris violated these two statutory provisions of

the ADTPA:

> (a)(1) Knowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services or as to whether goods are original or new or of a particular standard, quality, grade, style, or model;
> . . . .
>
> (10) Engaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade;

Ark. Code Ann. § 4-88-107 (Repl. 2011). These two provisions focus on the defendant's

acts. So the first question that must be answered is whether Philip Morris made a false

representation or engaged in a deceptive practice. The answer extends further than a

particular smoker's tar and nicotine intake. While plaintiffs' complaint alleged that Philip

Morris falsely represented Lights cigarettes as having lower tar and nicotine, plaintiffs also

alleged that Philip Morris employed deceptive techniques to reduce machine-measured

levels of tar in Lights cigarettes. Further, plaintiffs alleged that the Lights descriptor itself

was false and misleading. Because these allegations go beyond whether each consumer

who bought Lights actually received less tar or nicotine, individual issues regarding

smoking behavior are not dispositive.[3]

---

[3]*See, e.g.*, *Aspinall v. Philip Morris Cos.*, 813 N.E.2d 476, 489 (Mass. 2004) ("Neither an individual's smoking habits nor his or her subjective motivation in purchasing Marlboro Lights bears on the issue whether the advertising was deceptive."); *Craft v. Philip Morris Cos.*, 190 S.W.3d 368, 382 (Mo. Ct. App. 2005) ("Plaintiff's allegations go to the condition and labeling of the product at the time it was sold; they do



### B.    Causation

Philip Morris's next argument against predominance is that plaintiffs must prove reliance to sustain their claims under the ADTPA. According to Philip Morris, proof of this element would destroy predominance because each individual smoker bought Lights for different reasons. Furthermore, Philip Morris maintains that even if plaintiffs need not prove reliance, the same problem exists for the causation element.

The relevant statute reads as follows: Any person who suffers actual damage or injury *as a result of* an offense or violation as defined in the ADTPA has a cause of action to recover actual damages. Ark. Code Ann. § 4-88-113(f) (emphasis added). Here, the circuit court ruled that "[r]eliance is not a requirement for proceeding with any private cause of action under the ADTPA." The court went on to add that proving reliance would be "a legal impossibility in a case like the present matter where it is alleged [that Philip Morris] engaged in fraudulent nondisclosure and misinformation." Philip Morris argues that this was error, pointing to a case in which, they allege, this court ruled that reliance was an element of an ADTPA claim:

> Asbury Automotive maintains that any determination of whether it violated the Arkansas Deceptive Trade Practices Act will require individualized inquiries. *That is because one element of the Deceptive Trade Practices Act will involve the question of whether each individual class member relied on a car dealer's alleged deceptive conduct.* Asbury Automotive further maintains that there are other individualized inquiries that must be made, such as how much each plaintiff paid for his or her purchase.

*Asbury*, 366 Ark. at 610–11, 237 S.W.3d at 469 (emphasis added). Philip Morris's use of this quote is misplaced, as it was a recitation of the appellant's argument in *Asbury*, not an

not make defendant's liability dependent on each consumer's individual smoking behavior.").

SLIP OPINION

affirmative statement of Arkansas law. Of course, even if it were a statement of Arkansas law, it does not help Philip Morris. In the next paragraph of *Asbury*, we went on to say that to the extent reliance is an element of an ADTPA claim, that issue is secondary to the overall misrepresentation.

In *Asbury*, the plaintiffs brought a class-action claim against a car dealership, alleging that the dealership violated the ADTPA by charging a $100 document-preparation fee. The circuit court certified the class. On appeal, the dealership argued that individual issues—like how each plaintiff paid for the vehicle—destroyed predominance. We rejected this argument, reasoning that questions concerning the fee and the reason the dealership charged it were "overarching issues [that] can be resolved before the circuit court reaches any individual issues, such as the degree of reliance of each class member on the misrepresentation." *Id.* at 611, 237 S.W.3d at 469. Moreover, we have said that an individual class plaintiff's reliance on a defendant's misrepresentation does not destroy predominance:

> [A]lthough the fact that lack of reliance and diligence may be arguments raised by the appellants, these challenges will not override the common question relating to the allegation of a scheme perpetrated by the appellants. The overarching issue which must be the starting point in the resolution of this matter relates to the existence of the alleged scheme.

*SEECO, Inc. v. Hales*, 330 Ark. 402, 414, 954 S.W.2d 234, 241 (1997). Likewise, in this case, overarching issues regarding Philip Morris's misrepresentations about Lights cigarettes can be resolved before the circuit court decides any individual issues. In short, the

SLIP OPINION

overarching issue or starting point of plaintiffs' claim is whether Philip Morris engaged in a scheme to deceive smokers about the health benefits of Lights cigarettes.

Further, it would be premature for this court to prospectively set forth what the plaintiffs must prove to sustain their ADTPA claim. The issue whether the ADTPA requires proof of reliance is not before us. Any such ruling we would issue would be advisory and would require us to delve into the merits. Our only task is to see if the circuit court's ruling met the requirements of Rule 23. This is a purely procedural inquiry, and we should avoid deciding substantive issues not squarely before us. *E.g.*, *Fraley v. Williams Ford Tractor & Equip. Co.*, 339 Ark. 322, 335, 5 S.W.3d 423, 431 (1999) (noting that "the propriety of a class action is basically a procedural question"). The common issue of whether Philip Morris behaved in a deceptive manner predominates the litigation; this is true regardless of whether reliance is an element under the ADTPA.

This reasoning applies equally to Philip Morris's contention that, even if reliance is not required, causation is an individual issue that destroys predominance. Philip Morris asserts that each smoker bought Lights for various reasons—some liked the taste, others liked the brand, and others bought Lights even after discovering that Lights were no healthier than regular cigarettes. Again, these individual purchasing motivations are secondary to the overarching, predominant question that can be efficiently established on a class-wide basis. In other words, the misrepresentation element of plaintiffs' ADTPA claim can be proved (or not) by class-action adjudication first. Then, to the extent that causation



and reliance require individual inquiries, the circuit court can decertify the class in a bifurcated proceeding.

## C.    Damages

Bifurcation also solves Philip Morris's concern that damages are so individualized that the issue destroys predominance. According to Philip Morris, a plaintiff can only recover if he or she (1) failed to receive less tar or nicotine and (2) would have smoked less or quit smoking but for Philip Morris's fraud. For support, Philip Morris cites to a Second Circuit case that succinctly summarizes the point:

> [S]mokers who would have purchased full-flavored cigarettes instead of Lights had they known that Lights were not healthier would have suffered no injury because Lights have always been priced the same as full-flavored cigarettes. By contrast, those who would have quit smoking altogether could recover their expenses in purchasing Lights. And those who would have continued to smoke, but in greater moderation, could recover something in between. Thus, on the issue of out-of-pocket loss, individual questions predominate; plaintiffs cannot meet their burden of showing that injury is amenable to common proof.

*McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 228 (2d Cir. 2008).[4] The plaintiffs counter that they are entitled to damages for buying a product that was not as represented—that is, a safer, healthier, and less addictive cigarette.

---

[4]Philip Morris further cites *Wallis v. Ford Motor Co.*, where we held that a class-action claim failed to state a cause of action under the ADTPA because no actual damages lie where the only injury complained of is a diminution in value. 362 Ark. 317, 208 S.W.3d 153 (2005). But in that case, we affirmed the circuit court's decision to dismiss a claim under Ark. R. Civ. P. 12(b)(6). Because *Wallis* was not about class certification under Rule 23, it is inapposite. Our focus in interlocutory appeals from class-certification orders is "whether the requirements of Rule 23 are met" and "it is totally immaterial whether the petition will succeed on the merits or even if it states a cause of action." *Am. Abstract*, 358 Ark. at 9, 186 S.W.3d at 710.

SLIP OPINION

We do not comment on what evidence is sufficient to prove plaintiffs' damages claims under the ADTPA. Such an inquiry would require us to delve into the merits, which we will not do. But the existence of damages, at least for some plaintiffs, will depend on whether Philip Morris misrepresented its product. So the individualized inquiry regarding damages will not destroy predominance: "[T]he mere fact that individual issues and defenses may be raised by the defendant *regarding the recovery of individual class members* cannot defeat class certification where there are common questions concerning the defendant's alleged wrongdoing that must be resolved for all class members." *Simpson Hous. Solutions, LLC v. Hernandez*, 2009 Ark. 480, at 17, 347 S.W.3d 1, 12. The same goes for Philip Morris's affirmative defenses based on the statute of limitations, failure to mitigate damages, and the voluntary-payment rule. These are secondary to the "common questions concerning" Philip Morris's "alleged wrongdoing that must be resolved for all class members." *Id.*; *see also Fraley*, 339 Ark. at 335, 5 S.W.3d at 431 ("[C]onsideration of affirmative defenses at the class certification stage is an improper intrusion into the merits of the case.").

## IV. *Superiority*

Even if common issues predominate, Philip Morris argues that a class action is not a superior method of adjudication. Rule 23(b) provides that a class action must be "superior to other available methods for the fair and efficient adjudication of the controversy." *Asbury Auto.*, 366 Ark. at 611, 237 S.W.3d at 469. This court has held that the superiority requirement is satisfied if class certification is the more efficient way of handling the case,



and it is fair to both sides. *Id*. Where a cohesive and manageable class exists, we have held that real efficiency can be had if common, predominating questions of law or fact are first decided, with cases then splintering for the trial of individual issues, if necessary. *Id*. This court has further stated that when a circuit court is determining whether class-action status is the superior method for adjudication of a matter, it may be necessary for the circuit court to evaluate the manageability of the class. *Id*. In terms of manageability, the superiority requirement is closely related to predominance, as the presence of central individual issues makes class-action management more difficult. Newbern, *supra*, § 8:6

The class-action mechanism is a superior method to adjudicate the overarching, predominant issue of Philip Morris's misrepresentation regarding Lights cigarettes. The circuit court made the following findings regarding superiority:

42.     It would not be cost effective for each putative class member to file separate lawsuits.

43.     The courts of the State of Arkansas would be unable to handle hundreds of thousands or perhaps millions of individual cases.

44.     The defendants will only have to pay to litigate the issues presented by this matter one time, as opposed to potentially being required to appear and defend in dozens of courtrooms across the State of Arkansas.

These findings adequately supported the circuit court's conclusion that a class action is a superior method to adjudicate the claim. A class action saves Philip Morris the trouble of defending multiple ADTPA claims across the state and also provides a convenient mechanism for numerous consumers to settle the question whether Philip Morris misrepresented its product. In other words, both parties benefit from the more efficient



process of having the issue of Philip Morris's misrepresentation under ADTPA litigated in one setting.[5]

## V.     *Ascertainability*

Philip Morris's last argument is that the class is not ascertainable. It further argues that the court made no ruling regarding ascertainability and that we should reverse on those grounds alone. This argument is misplaced. Rule 23 does not require the circuit court to make an explicit ruling on whether the class is ascertainable.[6] Instead, we have said the following regarding this issue:

> It is axiomatic that in order for a class action to be certified, a class must exist. The definition of the class to be certified must first meet a standard that is not explicit in the text of Rule 23, that the class be susceptible to precise definition. This is to ensure that the class is neither "amorphous," nor "imprecise." Concurrently, the class representatives must be members of that class. Thus, before a class can be certified under Rule 23, the class description must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class. Furthermore, for a class to be sufficiently defined, the identity of the class members must be ascertainable by reference to objective criteria.

*Ferguson v. Kroger Co.*, 343 Ark. 627, 631, 37 S.W.3d 590, 593 (2001). In the present case, the circuit court met this requirement by defining the class as follows: All persons who purchased Lights cigarettes in Arkansas for personal consumption from November 1, 1971 through June 22, 2010. This class is definite and "ascertainable by reference to objective

[5]In so holding, we reject Philip Morris's separate argument that bifurcation would not create any efficiencies.

[6]In the case Philip Morris cites to support this proposition, we reversed because the circuit court made no findings regarding commonality, predominance, and superiority *Lenders Title Co. v. Chandler*, 353 Ark. 339, 107 S.W.3d 157 (2003). However, we never held that the circuit court, in addition to defining the class, had to make a separate finding of ascertainability.

SLIP OPINION

criteria." The circuit court did not have to go behind the class definition and make a separate finding that the class was readily ascertainable—the class definition speaks for itself.

Moreover, unlike *Ferguson*, *supra*, this class definition is straightforward. In *Ferguson*, class plaintiffs alleged that Kroger's double-coupon advertising campaign was false and misleading.[7] However, the problem was that the proposed class was defined by reference to five different criteria. We affirmed the circuit court's refusal to certify the class, finding that the class plaintiffs' "ability to define the class to be all but insurmountable." *Ferguson*, 343 Ark. at 634, 37 S.W.3d at 594. But here there is only one inquiry: Did a plaintiff ever buy Marlboro Lights during the specified time period? If so, he or she is a member of the class. This is hardly an "insurmountable" question to answer.

Philip Morris asserts that the class is still poorly defined, and unascertainable, because each class member will have to present receipts in order to opt-in to the class; it further contends that plaintiffs cannot provide receipts, and thus will not be able to prove their membership in the class. Plaintiffs respond that consumers can prove their class membership in other ways, for example, by an affidavit or through testimony. We agree with the plaintiffs. There is no receipt requirement in order to join a class action. One of

---

[7]"Kroger advertised to the general public that it would double the value of a manufacturer's coupon for goods on particular days. The value of that doubled coupon would then be deducted against the price of the product. During this time period, Kroger discounted the amount of state sales tax against the enhanced coupon value. The net result was that customers did not receive the full double-coupon value. Rather, they received the double-coupon value less the sales tax on the enhanced value, which was remitted to the applicable state revenue department by Kroger." *Ferguson*, 343 Ark. at 629, 37 S.W.3d at 591.

the rationales for the class-action mechanism is to provide individual consumers with an effective way to pool resources and collectively bring a claim that would otherwise be unremunerative if brought individually. Most consumers throw their receipts away on their way out the door; so a receipt requirement would undermine the class-action mechanism because so few class members could produce receipts from cigarette purchases made years ago.

VI.     *Conclusion*

We hold that the circuit court did not abuse its discretion in certifying this class. We therefore affirm the circuit court's certification order.

Affirmed.

HART, J., dissents.

*Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.*, by: *R.T. Beard, III*; and *Arnold & Porter LLP*, by: *Lisa S. Blatt*, *John C. Massaro*, and *David E. Kouba*, for appellants.

*Thrash Law Firm, P.A.*, by: *Thomas P. Thrash* and *Marcus Neil Bozeman*; *Don Barrett, P.A.*, by: *John W. "Don" Barrett* and *Brian K. Herrington*; and *Barnow & Associates, P.C.*, by: *Ben Barrow* and *Erich Schork*, for appellees.

*Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for amicus curiae Arkansas Trial Lawyers Association.

*Kitterman Law Firm, P.A.*, by: *Gregory S. Kitterman*; and *Elliott & Smith Law Firm*, by: *Don R. Elliott, Jr.*, for amici curiae Tobacco-Free Kids, American Lung Association, and American Cancer Society Cancer Action Network.

*Kutak Rock LLP*, by: *Jess Askew III*, for amicus curiae Arkansas State Chamber of Commerce.



# SUPREME COURT OF ARKANSAS

No. CV–14–193

PHILIP MORRIS COMPANIES, INC., a corporation and PHILIP MORRIS INCORPORATED, a corporation.

**APPELLANTS**

V.

WAYNE MINER and JAMES EASLEY, individually and on behalf of all others similarly situated

**APPELLEES**

Opinion Delivered February 26, 2015

APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CV-03-4661]

HONORABLE TIMOTHY DAVIS FOX, JUDGE

DISSENTING OPINION.

**JOSEPHINE LINKER HART, Associate Justice**

I respectfully dissent. The circuit court erred by certifying the class in this case because the appellees failed to satisfy the commonality and superiority requirements under the Arkansas Deceptive Trade Practices Act. A private cause of action may only be brought by individuals who have sustained "actual damages." The "actual damages" requirement, as codified at Arkansas Code Annotated section 4-88-113(f) leaves unsatisfied the commonality and superiority requirements of Rule 23 of the Arkansas Rules of Civil Procedure. I would also deny certification of this class because it is not ascertainable.

The circuit court certified the class as "All persons who purchased Defendants' Marlboro Light [and Marlboro Ultra Light] cigarettes in Arkansas for personal consumption from November 1, 1971, through June 22, 2010." The appellees' theory of the case was that anyone who purchased the Light cigarettes was misled by Philip Morris's marketing that Light cigarettes delivered less tar and nicotine, which it knew would be interpreted as being

SLIP OPINION

a healthier or safer cigarette. The design of the cigarette, it is alleged, contributed to "compensating," i.e., using a light cigarette in a way that was more dangerous—holding the cigarette to cover the air holes in the filter, inducing the smoker to smoke more cigarettes, or causing the smoker to inhale more deeply. However, even the appellees' experts conceded that ninety percent of smokers did not fully compensate and not every purchaser bought "Lights" because he or she believed it was a "healthier" cigarette. These facts are fundamental to the case.

The Arkansas Deceptive Trade Practices Act is an extraordinarily broad piece of consumer-protection legislation. It provides for both criminal enforcement[1] and civil enforcement.[2] However, most of the act is directed to the Attorney General. While it does authorize a private cause of action, that right is very restricted. Arkansas Code Annotated section 4-88-113(f) provides: "Any person who suffers actual damage or injury as a result of an offense or violation as defined in this chapter has a cause of action to recover actual damages, if appropriate, and reasonable attorney's fees." It is worth emphasizing that while the Attorney General may enjoin deceptive activity and seek restitution on behalf of the

---

[1] "Any person who knowingly and willfully commits an unlawful practice under this chapter shall be guilty of a Class A misdemeanor." Ark. Code Ann. § 4-88-103.

[2] In addition to the criminal penalty imposed hereunder, the Attorney General of this state shall have authority, acting through the Consumer Counsel, to file an action in the court designated in § 4-88-112 for civil enforcement of the provisions of this chapter, including, but not limited to, the seeking of restitution and the seeking of an injunction prohibiting any person from engaging in any deceptive or unlawful practice prohibited by this chapter.

Ark. Code Ann. § 4-88-104.

SLIP OPINION

people of Arkansas without identifying specific individuals who have been harmed or might potentially be harmed, the private cause of action requires "actual damages." A Person who has not sustained "actual damages" simply cannot bring a private lawsuit under the Arkansas Deceptive Trade Practices Act. Ark. Code Ann. 4-88-113(f). Accordingly, that person should not be made an unnamed plaintiff in a class action.

I agree with Philip Morris's assertion that the proposed class is manifestly unsuitable for class-wide adjudication because the core elements of the Arkansas Deceptive Trade Practices Act claim are that (1) Philip Morris misrepresented that Lights deliver lower tar and nicotine in a way "likely to deceive" a reasonable consumer, and (2) the misrepresentation caused plaintiffs (3) to suffer "actual damage or injury." Philip Morris contends that "[a]ny representation that Lights were lower in tar or nicotine was not false as to class members who smoked Lights in ways that actually delivered lower tar and nicotine." In those instances, the consumers got exactly what they were seeking.

Furthermore, these representations did not apply to those individuals who did not believe the alleged misrepresentations and thus did not rely on the alleged misrepresentation and purchased Lights for reasons other than lower tar and nicotine, such as taste. Philip Morris argues that injury could be shown "only if the purchasers did not receive less tar and nicotine *and* they would have spent less money on cigarettes in the absence of the alleged misrepresentation. Actual damages would depend on each class member's smoking habits, beliefs, and purchasing history. Obviously, a class member has suffered no "actual damages" if he or she bought Lights because of the taste, peer pressure, or for reasons other than he or



she believed that it was a "healthier" cigarette.

I also agree with Philip Morris that the necessity of determining the individual smoking habits, particularly with regard to whether a class member has sustained actual damages also defeats the superiority requirement of Rule 23. Neither side disputes that "minitrials" would be required to determine actual damages. Because the class is not ascertainable, no one can predict how many of these minitrials will be necessary, although it will be at least several thousand because Philip Morris expressed its intention to assert its due-process right to rebut each element of plaintiffs' claims. Accordingly, the circuit court's finding that superiority was satisfied because it would not be "cost effective" for each putative class member to file separate lawsuits," is clearly wrong because each class member would end up in that position anyway. Furthermore, I cannot ignore that Arkansas Code Annotated section 4-88-113(f) states that in private enforcement actions, reasonable attorney's fees would be awarded, so an individual private plaintiff would not incur the cost of paying for representation.

The circuit court also erred in certifying the class because it is not ascertainable. The majority echoes the appellees' contention that ascertainability is somehow entitled to lesser consideration because it is not a textual requirement in Rule 23 and, as counsel for the appellees disdainfully described it, "only judicially created." I contend that however this requirement was engendered, be it through a rule of civil procedure promulgated by this court or from one of our judicial opinion, ascertainability is entitled to equal dignity.

Philip Morris argues that this case is analogous to *Ferguson v. Kroger Co.*, 343 Ark.



627, 37 S.W.3d 590 (2001), where this court affirmed a denial of class certification because it was virtually impossible to identify class members and thus impossible to define the class. In *Kroger*, the cause of action alleged that consumers were misled by Kroger's double-coupon promotion because Kroger advertised to the general public that it would double the value of a manufacturer's coupon on particular days, but Kroger discounted the amount of state sales tax against the enhanced coupon value with the net result being that customers received the double-coupon value less the sales tax on the enhanced value, which was remitted to the applicable state revenue department by Kroger. This court stated:

> We acknowledge at the outset that defining the class size is not a specified prerequisite to class certification under Rule 23. But that alone does not decide the issue. This court has held that the exact number of a class need not be proved as a prerequisite for class certification. *See Mega Life & Health Ins. Co. v. Jacola, supra; Cheqnet Systems, Inc. v. Montgomery*, 322 Ark. 742, 911 S.W.2d 956 (1995); see also I Newberg on Class Actions, § 3.05 (3d ed.1992). But at the same time, we subscribe to the recognized principle that in order for a class to be certified, a class must exist and that this is implicit in Rule 23. The treatise, Moore's Federal Practice, states the proposition succinctly and the reasoning behind it:
>
> > It is axiomatic that in order for a class action to be certified, a class must exist. The definition of the class to be certified must first meet a standard that is not explicit in the text of Rule 23, that the class be susceptible to precise definition. This is to ensure that the class is neither "amorphous," nor "imprecise." . . . Thus, before a class can be certified under Rule 23, the class description must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class. Furthermore, for a class to be sufficiently defined, the identity of the class members must be ascertainable by reference to objective criteria. 5 Jeremy C. Moore, Moore's Federal Practice § 23.2(1) (Matthew Bender 3d ed.1997).
>
> A second distinguished treatise echoes these principles that class identity must be feasible and that the class cannot be excessively broad or amorphous. 7A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice & Procedure § 1760 (2d ed.1986); *see also Adashunas v. Negley*, 626 F.2d 600 (7th Cir.1980)

SLIP OPINION

(proposed class of all children with learning disabilities too difficult to identify and not adequately defined); *Intratex Gas Co. v. Beeson*, 22 S.W.3d 398 (Tex.2000); *Hamilton v. Ohio Savings Bank*, 82 Ohio St.3d 67, 694 N.E.2d 442 (1998). Clearly defining the class insures that those people who are actually harmed by the defendant's wrongful conduct will participate in the relief ultimately awarded. *See Simer v. Rios*, 661 F.2d 655 (7th Cir.1981).

*Ferguson*, 343 Ark. at 631-32, 37 S.W.3d at 593.

The case before us appears to be exactly like *Kroger*. As Philip Morris notes, there are no records that would tie a specific consumer to a particular purchase. While there are obviously records of how many packs of Marlboro Light cigarettes Philip Morris sold in Arkansas, there is no way to determine how many smokers bought them, as there is no concrete data on how many packs each smoker smokes. Also, the class is defined so broadly, all purchasers of Marlboro Lights in Arkansas, as to reach even those who had no actual damage.

In my view, the majority is wrong to approve of a class that cannot reasonably be ascertained, and is so broad as to include perhaps thousands of members who have sustained no actual damages and are thus not entitled to pursue a cause of action under the Arkansas Deceptive Trade Practices Act. I am mindful that this cause of action is directed against the manufacturer of cigarettes, a highly unpopular consumer good. However, this case will stand as precedent for *all* consumer goods. "Light" is the term that has been demonized today because it is associated with cigarettes. Should we countenance equally low standards for class certification when it comes to foods that are labeled "diet," all natural," "low-fat," or—dare I say—"light?"

6