# SUPREME COURT OF ARKANSAS

**No.** CV–15–966

| | |
|---|---|
| GERBER PRODUCTS COMPANY D/B/A NESTLÉ INFANT NUTRITION D/B/A NESTLÉ NUTRITION USA D/B/A NESTLÉ NUTRITION USA–INFANT NUTRITION D/B/A NESTLÉ NUTRITION USA–PERFORMANCE NUTRITION<br><br>APPELLANT<br><br>V.<br><br><br>DAVID HEWITT II ET AL., INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY SITUATED<br>APPELLEES | **Opinion Delivered** May 26, 2016<br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT [NO. CV-2012-715]<br><br>HONORABLE JAMES O. COX, JUDGE<br><br><br><br><br><br>AFFIRMED. |

**KAREN R. BAKER, Associate Justice**

Appellant, Gerber Products Company d/b/a Nestlé Infant Nutrition d/b/a Nestlé Nutrition USA d/b/a Nestlé Nutrition USA-Infant Nutrition d/b/a Nestlé Nutrition USA-Performance Nutrition ("Gerber") appeals the Sebastian County Circuit Court's January 23, 2015 order granting partial summary judgment in favor of appellees in their case alleging Gerber's liability for failure to pay certain overtime wages in violation of the Arkansas Minimum Wage Act ("AMWA"), Arkansas Code Annotated sections 11–4–201 et seq. (Repl. 2012 & Supp. 2015).

Appellees are employed by Gerber at its baby food processing and manufacturing facility located in Fort Smith, Arkansas ("employees"). On June 6, 2012, the employees filed

a class action complaint against Gerber in the Sebastian County Circuit Court.[1] The employees sought relief from Gerber's custom and practice of not fully compensating its employees for all the time the employees spent working at the facility, in violation of the AMWA. Specifically, the employees alleged that Gerber failed to compensate the employees for their time spent donning and doffing clothing and protective gear, sanitizing clothing and equipment, washing their hands, and walking to and from their work stations.[2] The employees asserted that these activities were necessary and indispensable to their principal work, but the employees were not compensated. This action was brought on behalf of hourly employees who are nonexempt from the overtime requirements of the AMWA and who were, are, or will be employed by Gerber at any time within three years prior to the filing of the complaint through the date of final disposition of the action, and who were, are, or will be required by Gerber to perform donning and doffing activities without compensation. The employees alleged the following facts regarding their tasks prior to beginning their shifts: upon arrival, the employees walk through an electronic turnstile which is activated by the employees swiping their security cards; the security turnstile records the time when the employee swipes the card; after going through the turnstile, the employees are required to walk to the locker rooms and change into the uniforms supplied by Gerber and to change into

---

[1]Patrick Murray, manager of the Fort Smith facility, was later added as a defendant. However, the August 4, 2015 final judgment states that the employees voluntarily dismissed their claims against Murray with prejudice.

[2]Additionally, the employees alleged that they were periodically required to work through their lunch breaks without compensation; this claim was dismissed by the circuit court's November 6, 2014 order. The employees' second cause of action was based on unjust enrichment; this claim was also dismissed by the circuit court's November 6, 2014 order.

shoes that are required to be kept at the facility; after changing into their uniforms, the employees are required to use a lint roller on their clothing, don protective gear such as hairnets, beard nets, ear plugs, and bump caps, and wash their hands; the employees are then required to walk a significant distance to clock in. At the completion of their shifts, the employees are required to clock out prior to doffing the protective clothing. The employees alleged that as a result of the mandatory donning and doffing activities, they were frequently required to work in excess of forty hours in a workweek without overtime compensation at a rate of at least one and a half times their regular rate of pay.[3]

In August 2014, both parties filed motions for summary judgment. The employees argued that there was no genuine issue of material fact that Gerber did not pay the employees for their time spent donning, doffing, washing, walking, and waiting. To support its motion for summary judgment, Gerber relied on collective-bargaining agreements between Gerber and Lodge 260 of the International Association of Machinists and Aerospace Workers, AFL–CIO ("Union"), which represented the employees during the negotiation process. During the 2010 labor negotiations, the Union proposed an amendment to Article 11.3 of the collective-bargaining agreement to require Gerber to compensate the employees for "18 minutes per day for donning and doffing." However, this request was removed from the 2010–2013 collective-bargaining agreement and the time spent donning and doffing was

---

[3]Gerber, on two separate occasions, attempted to remove this case to the United States District Court for the Western District of Arkansas. On November 6, 2012, and October 28, 2013, the district court entered orders granting the employees' motion to remand the case to the Sebastian County Circuit Court.

treated as noncompensable.  In 2013, the Union requested compensation for "30 minutes per day for donning and doffing."  The 2013–2016 collective bargaining agreement was ratified and included a provision treating donning and doffing time as compensable.  Article 6.13 of the 2013–2016 collective-bargaining agreement states as follows:

> The well-known custom and practice at this Fort Smith facility has for years been that time spent by employees donning and doffing clothes, shoes and various protective gear, and time spent performing related preparation or concluding activities like washing hands, linting off and walking to and from a work station (all activities referred to collectively in this Section as "Donning/Doffing"), are treated as non-compensable time. Under the immediately prior collective bargaining contract dated April 26, 2010, the Company and the Union agreed that time spent on Donning/Doffing was to be treated as non-compensable for the term of the contract. In the 2010 labor contract negotiations, the parties expressly bargained over various economic proposals of the Union, specifically including the issue of possibly treating Donning/Doffing time as compensable time, and the issue of increasing employees' base wage rates. Ultimately the Company agreed to grant increases to the base wage rates, but denied the Union's proposal to begin treating Donning/Doffing time as compensable. As a result of that bargaining, the past practice of treating Donning/Doffing time as non-compensable continued into and during the 2010 agreement.
>
> Starting as soon as practicable, but no longer than ninety (90) days after the ratification of the 2013 labor agreement, the Company will permit Donning/Doffing activities to be performed on regular paid time, both at the front and back end of an employee's shift.

Both parties' motions for summary judgment were initially denied.  However, on November 3, 2014, a hearing was held on the cross-motions for summary judgment, and the circuit court orally announced from the bench that it was changing its earlier order in favor of the employees.  On January 23, 2015, the circuit court entered a written order granting the employees' motion for partial summary judgment as to Gerber's liability for failure to pay certain overtime wages.  Specifically, the circuit court found that the AMWA requires Gerber

to "treat the time required by employees to complete the mandatory donning and doffing activities at issue in this lawsuit as compensable work time, notwithstanding any contrary custom or practice under a collective bargaining agreement applicable to those employees or any express agreement." Further, the circuit court found that the AMWA does not incorporate the Federal Labor Standards Act ("FLSA") 203(o) exception for donning and doffing. The circuit court specifically found as follows:

1.     Plaintiffs' Motion for Partial Summary Judgment is granted in part, as to [Gerber's] liability for failure to pay certain overtime wages. The Court concludes that the Arkansas Minimum Wage Act ("AMWA") requires that the employer, [Gerber], treat the time required by employees to complete the mandatory Donning and Doffing activities at issue in this lawsuit as compensable work time, notwithstanding any contrary custom or practice under a collective bargaining agreement applicable to those employees or any express agreement. The Arkansas Minimum Wage Act does not incorporate the federal 203(o) [exception] for clothes changing time in unionized facilities. There is no genuine issue of material fact that Gerber employed 4 or more individuals and that the class members worked more than 40 hours in one or more workweeks. Gerber did not treat the mandatory Donning and Doffing activities as compensable work time, and thereby violated the AMWA by failing to pay overtime as required by the Act.

    a.     "Donning" includes changing from personal clothes and shoes into the Company-supplied uniform pants and shirt, and work shoes or (protective shoe covers), putting on the required personal protective equipment–namely, a hairnet, a beard net if applicable, safety glasses, hearing protection and a bump cap (collectively described as "PPE")–washing hands and lint rolling one's clothes.

    b.     Doffing" includes changing out of the uniform pants and shirt and work shoes (or protective shoe covers) and into personal clothes and shoes, and removing the PPE.

2.     Because the time required to perform the Donning and Doffing activities is deemed by the Court to be compensable work time, certain walking and waiting time was compensable as well. This includes: a) the employees' post-Donning walking time from areas where the employees completed

Donning activities, to places where employees reported for duty, and b) the pre-Doffing walking time from time clocks where employees clocked out, to the places they performed their Doffing activities.

. . . .

4.  [Gerber's] Motion for Summary Judgment is reconsidered, and is denied. As discussed above, the AMWA requires employers to pay employees for all hours that employees are suffered or permitted to work. The mandatory Donning and Doffing Activities at Gerber's Fort Smith Plant are work under the AMWA. There is no genuine dispute that time spent by class members on Donning and Doffing activities was historically treated as non-compensable time pursuant to a custom and practice under the collective bargaining agreements in place between Gerber and the Union representing the class members. Nevertheless, the Court concludes that these facts are irrelevant to the liability aspect of Plaintiffs' claim for wages under the AMWA. The AMWA does not incorporate the federal 203(o) [exception].

Also on January 23, 2015, the parties stipulated to the remaining issues of fact and procedures. For purposes of the calculation of damages for the period of June 6, 2009, through August 4, 2013, the parties agreed that during each work shift, depending on the department, the employees spent 14.2 minutes to 20.22 minutes performing donning, doffing, waiting and walking activities.

On August 4, 2015, the circuit court entered an order denying the employees' request for liquidated damages, reasoning that "it is not clear that [Gerber] should have known prior to this Court's ruling that the compensation should have been paid for donning and doffing activities." The circuit court granted the employees' request for prejudgment interest at a rate of 6% per annum accruing based on the amount of damages on each payday within the damages period until entry of the final judgment.

On the same date, the circuit court entered its final judgment pursuant to its January

23, 2015 order and the parties' January 23, 2015 stipulation of the remaining issues of fact and procedures. Accordingly, the total amount of damages awarded to the employees was $3,001,669.84. In addition to the 6% prejudgment interest, the employees were awarded postjudgment interest at a rate of 10% per annum. On September 1, 2015, Gerber filed its notice of appeal.

*Law and Analysis*

On appeal, Gerber argues that the circuit court erred in granting the employees' motion for partial summary judgment. Generally, Gerber takes issue with the circuit court's finding that the AMWA requires Gerber to treat the time required by employees to complete the mandatory donning and doffing activities as compensable work time. Specifically, Gerber argues that donning and doffing activities are noncompensable based on 29 U.S.C. § 203(o), an exception contained in the FLSA. The employees respond that Gerber's failure to treat the donning and doffing activities as compensable work time resulted in a violation of the AMWA. Further, the employees argue that the AMWA does not contain the FLSA exception, and Arkansas Code Annotated section 11-4-218(b) prevents the parties from entering into an agreement in contravention of the overtime provision of the AMWA.

On appeal, the issue is whether the mandatory donning and doffing activities constitute compensable work time pursuant to the AMWA despite contrary custom and practice under the collective-bargaining agreement.

*Donning and Doffing Activities*

First, we consider whether the donning and doffing activities required by Gerber

7

constitute work for purposes of the AMWA. This is a case of first impression that turns on this court's interpretation of the AMWA.

A circuit court will grant summary judgment only when it is apparent that no genuine issues of material fact exist requiring litigation and that the moving party is entitled to judgment as a matter of law. *Quarles v. Courtyard Gardens Health & Rehab., LLC*, 2016 Ark. 112. Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id*. In reviewing a grant of summary judgment, an appellate court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered. *Id*. We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id*.

We review issues of statutory interpretation de novo. *See Ryan & Co. AR, Inc. v. Weiss*, 371 Ark. 43, 263 S.W.3d 489 (2007). The basic rule of statutory construction is to give effect to the intent of the General Assembly. *Id*. In determining the meaning of a statute, the first rule is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id*. This court construes the statute so that no word is left void, superfluous, or insignificant, and meaning and effect are given to every word in the statute if possible. *Id*. "This court is very hesitant to interpret a legislative act in a manner contrary to its express language, unless it is clear that a drafting error or omission has circumvented legislative intent." *Moore v. Moore*, 2016 Ark. 105, at 6, ___ S.W.3d ___, ___ (citing *Cave*

*City Nursing Home, Inc. v. Ark. Dep't of Human Servs.*, 351 Ark. 13, 89 S.W.3d 884 (2002)).

Turning to the relevant provisions of the AMWA, Arkansas Code Annotated section 11-4-211(a) provides that "no employer shall employ any of his or her employees for a work week longer than forty (40) hours unless the employee receives compensation for his or her employment in excess of the hours above specified at a rate not less than one and one-half (1 1/2) times the regular rate of pay at which he or she is employed."

Neither the AMWA nor the FLSA expressly defines the term "work." Arkansas Code Annotated section 11-4-203(2) defines "employ" as "to suffer or to permit to work." The plain and ordinary meaning of the word "work" is defined as an "activity in which one exerts strength or faculties to do or perform." *Webster's Third New International Dictionary* 2634 (1993). Upon arrival, the employees are required to change into uniforms and shoes, use a lint roller on their clothing, don protective gear, wash their hands, and walk to the preshift meeting. At the completion of their shifts, the employees are required to doff their protective clothing. We hold that the donning and doffing activities at issue constitute "work" because these activities are performed pursuant to strict procedures developed by Gerber and are performed for the benefit of Gerber.

The Arkansas Department of Labor's regulations also support our decision that time spent donning and doffing constitutes work. Arkansas Administrative Code 010.14.1-108(A)(1) (WL current through April 2016) provides that "[w]ork not requested but suffered or permitted is work time. For example, an employee may voluntarily continue to work at the end of the shift. He may be a pieceworker, he may desire to finish an assigned

task or he may wish to correct errors, paste work tickets, prepare time reports or other records. The reason is immaterial. The employer knows or has reason to believe that he is continuing to work and the time is working time." Arkansas Administrative Code 010.14.1-108(A)(3)goes on to state, "In all such cases it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them." Finally, Ark. Admin. Code 010.14.1-108(B)(2) provides that waiting time, while on duty, is considered worktime if the employee is unable to use the time effectively for his own purposes. Here, Gerber is accepting the benefit of the employees donning and doffing without providing proper compensation to the employees. Further, the time the employees spend performing these mandatory activities is time that the employees are unable to use for their own purposes.

Thus, Gerber's mandatory donning and doffing activities clearly constitute "work" as contemplated by the AMWA.[4]

*Collective-Bargaining Agreement*

Having determined that donning and doffing activities are considered work under the AMWA, we must next determine whether Gerber and the Union, through the collective-

---

[4]Gerber also argues that the AMWA does not require pay for time spent walking to and from workstations. Gerber cites to the FLSA and federal case law for the proposition that walking time is compensable only if it occurs after a principal activity. Further, Gerber argues that because donning and doffing is not a principal activity, walking time is noncompensable because it does not follow a principal activity. *See Adair v. ConAgra Foods, Inc.*, 728 F.3d 849, 851 (8th Cir. 2013). Because we hold that donning and doffing activities constitute work, we reject Gerber's argument regarding walking time.

bargaining agreement, are permitted to agree to not compensate the employees for donning and doffing activities.

Gerber argues that we should interpret the FLSA and the AMWA consistently and urges this court to engraft 29 U.S.C. § 203(o) into the AMWA, which would result in the time spent donning and doffing being noncompensable. To support its position, Gerber cites to *Department of Veterans Affairs v. Okeke*, 2015 Ark. 275, 466 S.W.3d 399, for the proposition that the AMWA mirrors the FLSA. Further, the employees argue that we should not engraft an FLSA exception when the legislature clearly chose to omit the exception from the AMWA.

At the outset, we must note that *Okeke* merely stated that "[t]he AMWA appears to impose the same overtime requirements as the FLSA." 2015 Ark. 275, at 6, 466 S.W.3d at 403. This statement should not be taken to mean that the AMWA and the FLSA impose the exact same requirements or that the two mirror each other exactly.

The federal exception at issue is 29 U.S.C. § 203(o) of the FLSA, which carves out an exception for unionized employees:

> In determining for the purposes of sections 206 and 207 of this title the hours for which an employee is employed, there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee.

29 U.S.C. § 203(o).

Gerber relies on Ark. Admin. Code 010.14.1-112, which states that the Arkansas Department of Labor "may rely on the interpretations of the U.S. Department of Labor and

federal precedent established under the Fair Labor Standards Act in interpreting and applying the provisions of [the AMWA] . . . except to the extent a different interpretation is clearly required."

The plain language of Arkansas Code Annotated section 11–4–218(b) demonstrates that a "different interpretation is clearly required." Section 11–4–218(b) states that "[a]ny agreement between the employee and the employer to work for less than *minimum wages* shall be no defense to the action." (Emphasis added.) "Minimum Wages" includes "overtime compensation." Arkansas Code Annotated section 11-4-218, entitled "Employee's remedies," specifically provides the following:

> (a)(1) Any employer who pays any employee less than the *minimum wages, including overtime compensation* or compensatory time off as provided by this subchapter, to which the employee is entitled under or by virtue of this subchapter shall:
>
> (A)   Pay any applicable civil penalties; and
>
> (B)   Be liable to the employee affected for:
>
> (i)   The full amount of the wages, less any amount actually paid to the employee by the employers; and
>
> (ii)   Costs and such reasonable attorney's fees as may be allowed by the court.

Ark. Code Ann. § 11-4-218(a)(1) (emphasis added).

Gerber altogether ignores this statute in its opening brief. However, in its reply brief, Gerber argues that section 11-4-218(b) does not apply to the collectively bargained labor agreement between Gerber and the Union. Gerber notes that the labor contract is not an agreement between a single employee and employer; rather, it is an agreement between an

employer and a well-established and sophisticated union. Gerber also argues that the collective-bargaining agreement did not result in any of the employees being paid less than minimum wage; rather, all of the employees were paid more than double minimum wage, and the average wage under the agreement was close to triple the amount of minimum wage.

Gerber's argument that the employees were paid more than double minimum wage is of no moment. Arkansas Code Annotated section 11-4-204, entitled "Law most favorable to employees applicable-Liberal construction," states in subsection (b) that "[t]his subchapter shall be liberally construed in favor of its purposes and shall not limit any law or policy that requires payment of higher or supplemental wages or benefits."

Next, Gerber focuses on Arkansas Code Annotated section 11-4-205, entitled "Right of collective bargaining not affected": Nothing in this subchapter shall be deemed to interfere with, impede, or in any way diminish the right of employers and employees to bargain collectively through representatives of their own choosing in order to establish wages or other conditions of work. Thus, Gerber's position appears to be that because the agreement at issue is a collective-bargaining agreement between an employer and a union, the parties were free to enter into an agreement in violation of other provisions of the AMWA.

We disagree with Gerber's position. In considering all the relevant statutes together and seeking to ascertain the legislature's intent, it is clear that had the legislature intended section 11-4-205 to except collective-bargaining agreements entered into between employers and unions from the AMWA, it would have included a provision similar to the FLSA's 203(o) exception. Further, it is well settled that we will not read into a statute a provision that was

13

not included by the General Assembly. *Scoggins v. Medlock*, 2011 Ark. 194, 381 S.W.3d 781 (citing *Potter v. City of Tontitown*, 371 Ark. 200, 264 S.W.3d 473 (2007)). Because the AMWA does not contain the FLSA's 203(o) exception, we decline to engraft this exception into the AMWA. To engraft the FLSA's 203(o) exception into the AMWA would involve the addition of words that do not appear in the text of the AMWA.

We hold that the donning and doffing activities constitute compensable work under the AMWA, despite the custom and practice under the collective-bargaining agreement. Further, we decline to engraft the FLSA's 203(o) exception into the AMWA. Accordingly, we affirm the circuit court's order granting the employees' motion for partial summary judgment.

Affirmed.

BRILL, C.J., and HART and WOOD, JJ., dissent.

**RHONDA K. WOOD, Justice, dissenting.** I respectfully dissent. As a result of the majority's decision, Arkansas will repeat the past mistakes of the federal government, and the floodgates will open to litigation at the enormous cost to businesses in Arkansas. In addition, the majority undermines the collective-bargaining process and destroys any confidence employers and employees have in the enforceability of their agreements.

The majority repeats the unfavorable history set in motion by the United States Supreme Court following its first interpretation of "work" and "workweek" under the FLSA. *See Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944); *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 690-91(1946). The initial version of the FLSA,

enacted in 1938, did not define "work" or "workweek," and the United States Supreme Court, in turn, interpreted those terms broadly. It defined "work" as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Tennessee Coal* 321 U.S. at 598. It similarly defined "the statutory workweek" to "includ[e] all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace." *Anderson* 328 U.S. at 690–91.These decisions resulted in an outpouring of lawsuits at the expense of businesses. As the Supreme Court recently acknowledged,

> These decisions provoked a flood of litigation. In the six months following this Court's decision in *Anderson*, unions and employees filed more than 1,500 lawsuits under FLSA. These suits sought nearly $6 billion in backpay and liquidated damages for various preshift and postshift activities.

*Integrity Staffing Sols., Inc. v. Busk*, 135 S. Ct. 513, 517 (2014).

Fortunately, following these decisions, Congress acted quickly and passed the Portal-to-Portal Act, which exempted employers from liability for future claims based on two specific categories: "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform," and "activities which are preliminary to or postliminary to said principal activity or activities." 29 U.S.C. § 254(a)(1), (2). The United States Supreme Court recently held in *Sandifer v. United States Steel Corp.*, 134 S. Ct. 870 (2014), that "changing clothes" under § 203(o) includes protective clothing worn as part of the principal activities for which workers are employed.

The majority repeats the mistakes of the past despite the fact that the AMWA's

regulations specifically instruct the state's labor department to look to federal precedent under the FLSA:

> The department may rely on the interpretations of the U.S. Department of Labor and federal precedent established under the Fair Labor Standards Act in interpreting and applying the provisions of the Act and Rule 010.14-100 through − 113, *except to the extent a different interpretation is clearly required*.

Ark. Code R. § 010.14-112 (emphasis added).

The majority contends that the General Assembly's silence signals a clear intent to depart from the FLSA. However, this is a departure from precedent. In instances where a state statute was silent on an issue, this court typically looked to analogous federal statutes and federal precedent. *See Island v. Buena Vista Resort*, 352 Ark. 548, 556, 103 S.W.3d 671, 675 (2003) ("We have explained that our state courts may look to federal decisions for persuasive authority when considering claims under the Arkansas Civil Rights Act."); *Kellar v. Fayetteville Police Dep't*, 339 Ark. 274, 279, 5 S.W.3d 402, 405 (1999) ("We have been given no reason why we should interpret Arkansas's *ex post facto* clause in a manner contrary to the . . . United States Constitution. Thus, we look to federal as well as state law for guidance."); *Barclay v. First Paris Holding Co.*, 344 Ark. 711, 726, 42 S.W.3d 496, 505 (2001) ("Our state system of income taxation is based on the federal system, and our legislature has consistently looked to the federal income tax regulations for guidance."); *UMLIC 2 Funding Corp. v. Butcher*, 333 Ark. 442, 447, 970 S.W.2d 211, 214 ("Because [12 U.S.C.] section 1821 is silent regarding the rights of transferees and assignees, state courts addressing this issue have looked to the federal courts and the applicable state common law for guidance.").

Similarly, other courts have looked to the FLSA for guidance when their state labor statute is silent on a particular issue. *See Mitchell v. JCG Indus.*, 929 F. Supp. 2d 827, 833 (N.D. Ill. 2013) ("Where the IMWL is silent on an issue, Illinois courts (and federal courts applying Illinois law) look to analogous federal statutes—the FLSA in particular—for guidance."); *Thompson v. Blessed Home Inc.*, 22 F. Supp. 3d 542, 550 (E.D. N.C. 2014) ("In interpreting the NCWHA, North Carolina courts look to the FLSA for guidance."); *Kirchoff v. Wipro, Inc.*, 894 F. Supp. 2d 1346, 1350 (W.D. Wash. 2012) ("[T]he Court may look to the FLSA for guidance in interpreting Washington's Minimum Wage Act.").

Second, there is no clear evidence that the General Assembly intended the AMWA to set aside long-established contracts between employers and organized labor unions. We cannot forget that the bargaining parties here are a corporation and a union. Both are sophisticated and well-practiced negotiators. The record reflects that it was the custom and practice between Gerber and the union to exclude donning and doffing activities from paid time. During negotiations, the union requested donning and doffing pay, but later abandoned that proposal. Following negotiations, the union accepted the terms of the contract. We cannot know whether the union received higher wages or extra benefits in exchange for dropping its request for donning and doffing. Nevertheless, the employees received wage increases and other benefits as a result of the negotiations. The settled practice of excluding donning and doffing remained in place.

Significantly, the AMWA discourages interpretations of the Act that interfere with or impede collective bargaining. Ark. Code Ann. § 11-4-205. Arkansas law specifically and

repeatedly provides that the right to collectively bargain is of upmost importance to the public policy of this State. Arkansas Code Annotated section 11–3–301 states, "Freedom of organized labor to bargain collectively and freedom of unorganized labor to bargain individually is declared to be the public policy of the state under Arkansas Constitution, Amendment 34." Furthermore, Arkansas Code Annotated section 11–4–205 provides, "Nothing in this subchapter shall be deemed to interfere with, impede, or in any way diminish the right of employers and employees to bargain collectively through representative of their own choosing in order to establish wages or other conditions of work." Thus, there is no need to engraft the FLSA's § 203(o) exception into the AMWA as the majority opines. The AMWA's own text demonstrates that collectively bargained-for agreements should be upheld.

Furthermore, the majority's statement that the plain language of the AMWA requires us to abrogate the collective-bargaining agreement between Gerber and the class employees is irrelevant since the AMWA's minimum-wage requirement has not been violated. The AMWA provides remedies for employees against only the "employer who pays any employee less than the minimum wages, including overcompensation or compensatory time off." Ark. Code Ann. § 11–4–218(a). However, it is undisputed in this case that the employees' wages were well above the required minimum wage. The parties agree that every class member earned almost three times the minimum wage. As section 11–4–218(a) and (b) have not been violated, there is no remedy available to the class members.[1]

---

[1] Although section 11–4–218(b) states that "an agreement between the employee and the employer to work for less than minimum wages shall be no defense to the action," that

For this court to abrogate the collectively bargained agreements between Gerber and its employees, which have customarily and generally excluded donning and doffing from the rate of pay, and afford the employees a windfall, is unjustified, particularly when the agreements do not violate the minimum-wage requirement. For these reasons, I would reverse the circuit court's denial of Gerber's motion for summary judgment and dismiss the case.

BRILL, C.J., and HART, J., join.

*Quattlebaum, Grooms & Tull PLLC*, by: *E.B. Chiles IV* and *Joseph R. Falasco*, for appellant.

*Holleman & Associates, P.A.*, by: *John Holleman* and *Timothy A. Steadman*; and *Byars, Hickey & Hall, P.L.L.C.*, by: *Joe D. Byars, Jr.*, for appellees.

---

applies only if the agreement results in the employee receiving wages that are below the minimum—which clearly is not the situation in this case.