Cite as 2019 Ark. 365
# SUPREME COURT OF ARKANSAS
No.CV-18-389

| | |
|---|---|
| | **Opinion Delivered:** December 5, 2019 |
| MARK CROCKETT AND MACON CARTER | APPEAL FROM THE PHILLIPS COUNTY CIRCUIT COURT |
| APPELLANTS | [NO. 54CV-17-36 ] |
| V. | HONORABLE RICHARD L. PROCTOR, JUDGE |
| SHELTER MUTUAL INSURANCE COMPANY | |
| APPELLEE | AFFIRMED. |

**ROBIN F. WYNNE, Associate Justice**

Mark Crockett and Macon Carter appeal from an order of the Phillips County Circuit Court granting summary judgment in favor of Shelter Mutual Insurance Company (Shelter) on their claim arising from medical expenses they incurred following an automobile accident. On appeal, appellants contend that the trial court erred by granting summary judgment in favor of Shelter because the policy language is ambiguous or, alternatively, the policy language is against public policy and should be declared void. Appellants also ask this court to reverse the denial of their motion in limine seeking to exclude evidence of their health insurance or bill reductions by medical providers. We affirm.

On February 12, 2016, appellants were passengers in a 2014 Nissan Versa that was owned by Johnny Carter and being driven by Frank Ross. The vehicle was involved in an accident. Carter had taken out a policy of insurance on the vehicle with Shelter. The policy

contained a provision providing medical-expense benefits of up to $5000 per person. Neither Crockett nor Carter had automobile medical-payment coverage. On March 2, 2017, appellants filed suit against Shelter, contending that they were entitled to medical benefits under Carter's policy with Shelter and that Shelter had "failed, refused and neglected in bad faith" to make payments in violation of Arkansas Code Annotated section 23-89-202. Crockett alleged that he had incurred medical expenses in the amount of $4,165.80, and that Shelter had paid only $2,706.68 and refused to pay the balance. Carter alleged that he had incurred medical expenses in the amount of $10,443.47, that Shelter had only paid $915 in benefits, and that Shelter refused to pay the balance up to the policy limit of $5000. In addition to payment of their medical expenses, appellants sought a statutory penalty, fees, and interest.

Shelter answered the complaint and subsequently filed a motion for summary judgment. In the motion, Shelter contended that appellants' medical providers had been paid at a reduced rate that satisfied appellants' medical expenses in full. Appellants opposed the motion for summary judgment and filed a cross-motion for partial summary judgment. They contended that they were entitled to additional funds under the policy's medical–benefits provision because the language of the policy was ambiguous, and that the policy language was void as contrary to public policy. Appellants also filed a motion in limine seeking to prevent Shelter from making any references at trial to payments it had made.

The trial court held a hearing on the parties' various pretrial motions. On March 7, 2018, the trial court entered an order denying appellants' motion for partial summary

judgment and motion in limine and granting Shelter's motion for summary judgment. This appeal followed.

The law is well settled regarding the standard of review used by this court in reviewing a grant of summary judgment. *Muccio v. Hunt*, 2016 Ark. 178, 490 S.W.3d 310. A trial court will grant summary judgment only when it is apparent that no genuine issues of material fact exist requiring litigation and that the moving party is entitled to judgment as a matter of law. *Id.* The burden of proof shifts to the opposing party once the moving party establishes a prima facie entitlement to summary judgment; the opposing party must demonstrate the existence of a material issue of fact. *Id.* After reviewing the evidence, the trial court should deny summary judgment if, under the evidence, reasonable minds could reach different conclusions from the same undisputed facts. *Id.*

Appellants argue that the trial court erred by granting summary judgment in favor of Shelter because the applicable policy language is ambiguous. Language is ambiguous if there is doubt or uncertainty as to its meaning and it is susceptible to more than one reasonable interpretation. *Smith v. Prudential Prop. & Cas. Ins. Co.*, 340 Ark. 335, 10 S.W.3d 846 (2000). Ordinarily, the question of whether the language of an insurance policy is ambiguous is one of law to be resolved by the court. *Western World Ins. Co. Inc. v. Branch*, 332 Ark. 427, 965 S.W.2d 760. When a contract is unambiguous, its construction is a question of law for this court. *Id.*; *Unigard Sec. Ins. Co. v. Murphy Oil USA, Inc.*, 331 Ark. 211, 962 S.W.2d 735 (1998). When contracting parties express their intention in a written instrument in clear and unambiguous language, it is the court's duty to construe the writing in

accordance with the plain meaning of the language employed. *Green v. Ferguson*, 263 Ark. 601, 567 S.W.2d 89 (1978).

Part II, Coverage C of the insurance policy states "**we** will pay the **reasonable charges** for **necessary goods and services** for the treatment of **bodily injury** sustained by an **insured**." (Emphasis original.) The policy defines "reasonable charges" as the lesser of:

(a) The amount for which **we** can discharge the **insured's** entire obligation to the person providing the goods and services; or

(b) The charges incurred for goods and services that in **our** judgment, are within the range of charges for the same or similar goods and services, in the geographic area where the services are rendered or the goods are purchased.

(Emphasis in original.) The policy defines "we" to mean the Shelter Company providing the insurance.

Appellants' argument regarding ambiguity is rooted in the fact that their counsel negotiated with the medical providers to take less than the full amount of the bills in satisfaction of the debt. They contend that the phrase "the amount for which we can discharge" in the definition of "reasonable charges" could, in addition to Shelter's interpretation of the language, be reasonably interpreted to mean the amount for which Shelter itself was responsible for discharging. They argue that, as a result of the ambiguity in the policy language, summary judgment was not proper in this case.

Appellants are incorrect in their assertion that the applicable policy language is ambiguous. In the context of a debt, to "discharge" means "to get rid of (as a debt or obligation) by performing an appropriate action (as payment)." *Discharge, Merriam-Webster's*

4

*Collegiate Dictionary* (11th ed. 2009). There is no reasonable interpretation of the term "discharge" that could render it applicable to negotiating a lower amount as opposed to paying the amount. Shelter discharged appellants' debts through its payments. The trial court did not err in granting summary judgment on this basis.

Next, appellants contend that the language in Shelter's policy is against the public policy of the State of Arkansas, as reflected in Arkansas Code Annotated section 23-89-202 (Repl. 2014), which states as follows,

> Every automobile liability insurance policy covering any private passenger motor vehicle issued or delivered in this state shall provide minimum medical and hospital benefits, income disability, and accidental death benefits under policy provisions and on forms approved by the Insurance Commissioner to the named insured and members of his or her family residing in the same household injured in a motor vehicle accident, to passengers injured while occupying the insured motor vehicle, and to persons other than those occupying another vehicle struck by the insured motor vehicle, without regard to fault, as follows:
>
> (1) MEDICAL AND HOSPITAL BENEFITS. All reasonable and necessary expenses for medical, hospital, nursing, dental, surgical, ambulance, funeral expenses, and prosthetic services incurred within twenty-four (24) months after the automobile accident, up to an aggregate of five thousand dollars ($5,000) per person, and may include any nonmedical remedial care and treatment rendered in accordance with a recognized religious method of healing. Expenses for hospital room charges may be limited to semiprivate accommodations;
>
> (2) INCOME DISABILITY BENEFITS. Seventy percent (70%) of the loss of income from work during a period commencing eight (8) days after the date of the accident, and not to exceed fifty-two (52) weeks, but subject to a maximum of one hundred forty dollars ($140) per week. In the case of a nonincome earner, the benefits shall consist of expenses not to exceed seventy dollars ($70.00) per week, or any fractional part of a week, which are reasonably incurred for essential services in lieu of those the injured person would have performed without income during a period commencing eight (8) days after the date of the accident and not to exceed fifty-two (52) weeks; and

(3) ACCIDENTAL DEATH BENEFITS. The sum of five thousand dollars ($5,000), to be paid to the personal representative of the insured, should injury, sickness, or disease resulting from an automobile accident cause death within one (1) year from the date of the accident.

Although appellants' precise argument is somewhat difficult to discern, it appears that they are contending that they are entitled under section 23-89-202 to receive payment of the difference between what the providers billed and the amount the providers agreed to accept from Shelter up to $5000. The clear intention of section 23-89-202 is to afford those covered under an applicable policy of insurance a minimum of $5000 in available coverage so that their medical expenses can be covered up to that amount. There is nothing in the statute that would permit appellants to receive the difference between what the providers billed and what they accepted as full satisfaction of the debt. Nor would such a decision reflect sound public policy, as it would result in insurers providing benefits in addition to medical benefits, which is neither required by the statute nor contemplated under the insurance policy provisions at issue.

Appellants' final argument is that the trial court erred in denying their motion in limine. As the trial court did not err in granting summary judgment, this argument is moot.

Affirmed.

*Stoner Law PLLC*, by: *Kyle Stoner*; and

*David Hodges*, for appellants.

*Matthews, Sanders & Sayes, P.A.*, by: *Mel Sayes*, for appellee.