Cite as 2020 Ark. 354

# SUPREME COURT OF ARKANSAS

No. CV-19-907

| | |
|---|---|
| | **Opinion Delivered:** October 29, 2020 |
| KOPPERS, INC. | |
| APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CV-16-3025] |
| V. | |
| KELVIN TROTTER, NATHANE DAVIS, LONZO ALLEN, AND KEN PIGGEE, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED | HONORABLE CHRISTOPHER CHARLES PIAZZA, JUDGE |
| APPELLEES | AFFIRMED. |

**RHONDA K. WOOD, Associate Justice**

Koppers, Inc., appeals the circuit court's order granting class certification of appellees' complaint. Appellees—class plaintiffs below—were Koppers employees and alleged Koppers failed to pay them for time spent changing into and out of protective equipment. Koppers claims its liability cannot be established on a classwide basis because whether a plaintiff can recover depends on individualized facts. We find no abuse of discretion and affirm.

I. *Facts and Procedural Background*

In June 2016, Koppers hourly employees Kelvin Trotter, Nathane Davis, Lonzo Allen, and Ken Piggee filed this action against Koppers. Koppers operates a crosstie treatment facility in North Little Rock, Arkansas. According to a Koppers-supplied affidavit, Koppers employs approximately sixty-five hourly employees at the facility. These employees fill thirty

different positions that fall within four various departments: unloading, treating, shipping, and maintenance. Regardless of position or department, Koppers requires all hourly employees to wear a similar uniform. All hourly employees must "don" (put on) a uniform consisting of either coveralls or a long-sleeved shirt and pants, a hard hat, boots, and safety glasses. The employees don at a bathhouse before they walk to their respective workstations. Toward the end of the shift, all hourly employees must return to the bathhouse to "doff" (take off) the uniform before leaving the facility.

Plaintiffs alleged Koppers did not pay them for the time they spent donning and doffing their uniforms and protective equipment, or for the time spent walking to and from their workstations. As a result, plaintiffs allege Koppers did not pay them for working overtime in violation of the Arkansas Minimum Wage Act ("AMWA"). Ark. Code Ann. § 11-4-211(a) (Supp. 2019). Plaintiffs moved to certify a class, and the circuit court granted the motion. Koppers appealed and argued the order did not comply with the mandatory requirements of Arkansas Rule of Civil Procedure 23. This court agreed and remanded for entry of a compliant order. *Koppers, Inc. v. Trotter*, 2019 Ark. 134, 572 S.W.3d 372.

On remand, the circuit court held another hearing. The parties submitted supplemental pleadings, attaching deposition testimony. The circuit court again certified the class. The court defined the class as follows:

All individuals who were, are, or will be employed by Defendant Koppers, Inc. as hourly paid employees at the Koppers plant in North Little Rock, Arkansas, at any time between June 3, 2013, through the date of the final disposition of this action, and who were, are, or will be required to perform donning and doffing activities.

The circuit court also identified questions of law or fact common to the class. The court further concluded Koppers' donning and doffing policy applied to all class members and whether this policy unlawfully deprived plaintiffs of compensation under the AMWA was "the overarching, predominating issue in this case." The court also concluded Koppers' recording-keeping policy regarding the time its employees spent donning and doffing predominated: if Koppers kept records as required, then class members could easily compute how much time they spent donning and doffing; if Koppers did not keep records, then class members could use an expert's study to approximate this time by a "just and reasonable inference." And last, the court found a class action was a superior way to adjudicate the claim, noting it would be more efficient to establish Koppers' liability in a single forum, rather than sixty-five individual lawsuits.

II. *Standard of Review*

Arkansas Rule of Civil Procedure 23 sets the parameters for certification of a class action. Rule 23 imposes six prerequisites for certification of a class-action complaint: (1) numerosity; (2) commonality; (3) typicality; (4) adequacy; (5) predominance; and (6) superiority. Ark. R. Civ. P. 23(a), (b); *Philip Morris Cos., Inc. v. Miner*, 2015 Ark. 73, 462 S.W.3d 313. Circuit courts have broad discretion over class certification, and we will not reverse a circuit court's decision to grant or deny class certification absent an abuse of discretion. *SEECO, Inc. v. Snow*, 2016 Ark. 444, 506 S.W.3d 206. When reviewing a class-certification order, we focus on the evidence in the record to determine whether it supports the circuit court's conclusion. *Asbury Auto. Grp., Inc. v. Palasack*, 366 Ark. 601, 237 S.W.3d

3

462 (2006). We consider only whether Rule 23's requirements have been satisfied. *Cach, LLC v. Echols*, 2016 Ark. 446, 506 S.W.3d 217. We "will not delve into the merits of the underlying claims when deciding whether the Rule 23 requirements have been met." *Nat'l Cash, Inc. v. Loveless*, 361 Ark. 112, 116, 205 S.W.3d 127, 130 (2005). Koppers challenges the circuit court's finding on commonality, predominance, and superiority.

### III. *Discussion*

### A. Commonality

Under the commonality requirement, there must be "questions of law or fact common to the class." Ark. R. Civ. P. 23(a)(2). Only a single common issue is required. *Philip Morris*, 2015 Ark. 73, at 4, 462 S.W.3d at 316. There are two preliminary elements necessary to establish a violation of the overtime provisions of the AMWA. Ark. Code Ann. § 11-4-211(a). First, plaintiffs must show that an employee worked over forty hours a week. *Id.* Second, plaintiffs must establish that Koppers did not pay the employee one and one-half times the regular rate for the work performed in excess of forty hours. *Id.*

Here, the circuit court identified several common issues. One salient common issue is Koppers' policy or practice for donning and doffing. Plaintiffs alleged Koppers required them to report to their workstations at their scheduled start time fully dressed; they then stayed at their stations until the shift ended, changing into street clothes only after the whistle blew. As put in their complaint: "Although the employees clock-in before they put on the required uniform and equipment and clock out after they remove the uniform and

4

equipment, they are not paid for this time. Rather, employees are only paid for their scheduled time."

Notably, Koppers does not dispute that donning, doffing, and walking in this context constitute "work" under the AMWA. Nor does Koppers dispute that employees who work more than forty hours a week are entitled to overtime pay under the AMWA. Further, while Koppers denied in its answer that this was its policy, it tacitly acknowledged such a practice in its brief: "The record suggests that, at some time four to five years ago, Koppers did not allocate much, if any, shift time to donning, doffing, and [walking]." *Appellant's Br. at 14.* Koppers points out that its practice changed sometime around 2015 or 2016. Citing deposition testimony from the plaintiffs, Koppers notes that it began allocating five minutes at the beginning of the shift and ten minutes at the end of the shift for donning and doffing.

We cannot find the circuit court abused its discretion. A fact-based, merits question exists whether Koppers required its employees to don and doff without compensation. Per a previous decision of this court, donning and doffing constitutes work under the AMWA, and plaintiffs, under this theory, should have been compensated.[1] Plaintiffs alleged they were not. Whether Koppers indeed had this practice and when it ended is a question common to all class members. *See City of Conway v. Shumate*, 2017 Ark. 36, at 6, 511 S.W.3d 319, 325 (holding that uniform practice by class defendant established a common question). The parties can litigate the factual parameters of the policy on summary judgment or at trial. But

---

[1] *Gerber Prod. Co. v. Hewitt*, 2016 Ark. 222, 492 S.W.3d 856, *superseded by statute*, Act of Apr. 5, 2017, No. 914, 2017 Ark. Acts 4924.

at this early procedural stage, we hold the circuit court did not abuse its discretion when it concluded this issue was common to all class plaintiffs. *Cf. Van Buren Sch. Dist. v. Jones*, 365 Ark. 610, 613, 232 S.W.3d 444, 448 (2006).

## B. Predominance

The next issue involves predominance, which "is a more stringent requirement than commonality." *United Am. Ins. Co. v. Smith*, 2010 Ark. 468, at 10, 371 S.W.3d 685, 692. Predominance exists if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Ark. R. Civ. P. 23(b). The starting point in examining the predominance requirement is whether plaintiffs allege a common wrong against the defendant. *Kersten v. State Farm Mut. Auto. Ins. Co.*, 2013 Ark. 124, 426 S.W.3d 455. This element can be satisfied if the court can resolve preliminary, common issues before any individual issues. *Asbury Auto.*, 366 Ark. at 610, 237 S.W.3d at 469.

This determination is not simply a comparison of the number of individual versus common claims. *Philip Morris*, 2015 Ark. 73, at 6, 462 S.W.3d at 318. Instead, it is whether the issues common to all plaintiffs "predominate over" the individual issues, which can be resolved during the decertified stage of bifurcated proceedings if necessary. *Id.* Conducting a trial on the common issue in a representative fashion may achieve judicial efficiency. *Id.* Thus, individual issues and defenses of individual members will not defeat class certification where there are common questions concerning the defendant's alleged wrongdoing that predominate. *Id.*

6

As discussed above, the circuit court found that Koppers' policy on donning and doffing—whatever it may be—constituted an "overarching, predominating issue." Koppers disputes this because it has "long abandoned" its practice of not compensating its employees for donning and doffing. Because the class includes plaintiffs subject to both the old practice and the new practice, Koppers argues, its policy cannot predominate over individualized issues.

But again, the record is not clear what Koppers' policy was. Koppers does not pin down when the policy changed, but asserts it was sometime in 2015 or 2016. Yet the class includes claims arising from as far back as 2013. Once the parties establish factual specifics during discovery or trial, then the issue will be ripe for possible bifurcation. Indeed, should the policy change lead to two identifiable classes, the circuit court can bifurcate the proceedings between pre- and post-policy-change claimants. *See Philip Morris*, 2015 Ark. 73, at 12, 462 S.W.3d at 320.

Koppers also disputes the circuit court's ruling that Koppers' record-keeping policy predominates. For support, it cites another minimum-wage-act class-action appeal. *Ark. Dep't of Veterans Affairs v. Mallett*, 2015 Ark. 428, 474 S.W.3d 861. There, employees alleged their employer automatically deducted thirty minutes for lunch, even though the employees worked through the break. The employees represented twenty different positions. We concluded no predominating question existed because the employees did "not share the same or similar job duties that would require them to work through their meal breaks." *Id.* at 7, 474 S.W.3d at 866. We noted liability would be highly individualized because "if the

employee did not work through lunch, and if the employee failed to work more than forty hours in a given work week, there could be no liability." *Id.* at 8, 474 S.W.3d at 866.

Koppers argues this case presents the same challenges: the employees purport to represent thirty different jobs, and each employee spends a different amount of time donning, doffing, and walking. Liability to any one employee, it argues, would depend on how much time he or she spent doing this compensable work outside shift time. However, this is not a *Mallett* question of liability, but a question of damages. Here, unlike the class plaintiffs in *Mallett*, the policy required every employee to wear protective equipment. And per the allegations, for some time, Koppers required each employee to arrive at the workstation fully dressed and leave fully dressed. The circuit court did not abuse its discretion when it determined that liability issues predominated over individual questions about damages. *Philip Morris*, 2015 Ark. 73, at 13, 462 S.W.3d at 321 (noting that "individualized inquiry regarding damages will not destroy predominance"). *Mallett* does not compel reversal.

## C. Superiority

Last, Koppers argues that a class action is not a superior method to adjudicate the plaintiffs' claims because its liability can be established only by individual inquiry. It also argues that the fee-shifting mechanism in the AMWA gives plaintiffs adequate incentive to bring their own individual claims such that a class action does not offer a superior method of adjudication. Again, the circuit court did not abuse its discretion.

Rule 23(b) provides that a class action must be "superior to other available methods for the fair and efficient adjudication of the controversy." The superiority requirement is satisfied if class certification is the more efficient way to handle the case and it is fair to both sides. *Infinity Healthcare Mgmt. of Ark., LLC v. Boyd*, 2019 Ark. 346, 588 S.W.3d 22. The superiority requirement is closely related to predominance. *Philip Morris*, 2015 Ark. 73, at 14, 462 S.W.3d at 321.

First, as already discussed above, Koppers' liability—specifically, its policy on donning and doffing—could be established on a classwide basis. For this reason, we cannot find the circuit court abused its discretion in finding the class-action mechanism offers a superior way to adjudicate the claims. All parties can settle in a single forum Koppers' liability. And Koppers will only have to defend one suit, instead of sixty-five. "The avoidance of a multitude of suits lies at the heart of any class action certification." *BNL Equity Corp. v. Pearson*, 340 Ark. 351, 361, 10 S.W.3d 838, 844 (2000).

Second, Koppers argues superiority fails because the AMWA allows an injured plaintiff to recover attorney's fees and liquidated damages. Ark. Code Ann. § 11-4-218(a). This regime, Koppers argues, incentivizes individual claims and weighs against class certification. In support, Koppers directs us to several unpublished federal district court cases. This court, however, follows a different standard from the federal courts. *See Infinity Healthcare*, 2019 Ark. 346, at 14, 588 S.W.3d 22, 31. These cases do not persuade us that an incentive to bring small-dollar, individual claims destroys the efficacy of the class-action mechanism when the remaining elements of Rule 23 have been satisfied.

9

On the whole, we find the circuit court did not abuse its discretion in certifying the class.

Affirmed.

HART, J., dissents.

**JOSEPHINE LINKER HART, Justice, dissenting.** This case should be reversed and remanded because class action is not the superior way to address whatever claims may legitimately be raised by, at the most, sixty-five employees. Contained within the overly inclusive class definition are individuals who have never been and will never be aggrieved by Koppers's pay policies. Moreover, the Arkansas Minimum Wage Act contains a fee-shifting provision so that the remaining potential plaintiffs with legitimate causes could be made whole without out-of-pocket expenditures for legal fees.

Somehow, the majority seems to have lost sight of the fact that this is a wage-and-hour case. That means this controversy concerns, at worst, a few minutes each shift that Koppers's employees spend donning and doffing protective gear and proceeding to and from their workstations. It is not disputed that prior to 2015 or 2016, workers were not compensated for this time. It is likewise not disputed that subsequently, Koppers revised its policies to allocate paid time for this activity, although whether the allotted time was sufficient for each individual worker on a particular day is still an issue. Slow dressers and slow walkers get the same time as fast dressers and fast walkers. If an employee's workstation is next to the bathhouse, compensation may be adequate, perhaps not for workers who need to travel further. Accordingly, the amount of uncompensated time, if any, varies from none

10

to some for each perspective class member. Thus, while Koppers's pay policies regarding donning and doffing are admittedly an overarching issue, the damages, if any, are highly individualized. Herein lies the problem.

As I alluded to earlier, the class defined by the circuit court is clearly overinclusive. The definition is as follows:

> All individuals who were, are, or will be employed by Defendant Koppers, Inc. as hourly paid employees at the Koppers plant in North Little Rock, Arkansas, at any time between June 3, 2013, through the date of the final disposition of this action, and who were, are, or will be required to perform donning and doffing activities.

The class likely contains individuals who may not have been paid for donning and doffing prior to the policy change, newer hires who were always properly compensated, and perhaps old and new employees who at times were undercompensated for donning or doffing if they changed their clothes or walked to their workstations more slowly than other workers or even themselves on one day or another. In short, an individual worker's potential claim is affected by his or her own performance of this part of the job, not just the employer's policies.

I am mindful that the concept of "predominance" essentially ceased to exist as meaningful inquiry after this court's decision in *Philip Morris Cos., Inc. v. Miner*, 2015 Ark. 73, 462 S.W.3d 313. The *Miner* court considered "commonality" and "predominance" under the same rubric, in practice, though perhaps not in rhetoric, irredeemably blurring the distinctions between the two concepts. However, it is undeniable that accounting for the uncompensated time is of paramount concern in a wage case, since this is the measure of damages. By comparison, in *Miner*, the deceptive advertising supposedly attached to every

11

package of cigarettes sold, whether or not the individual smoker's technique actually damaged his or her health. Yet despite the holding in *Miner*, distinct differences in class-member behavior still could––and should––be addressed in our class-action jurisprudence.

In the case at bar, "superiority" dictates that this class certification be reversed. Koppers's donning and doffing *policy* is easily ascertainable for the time frame embraced by the lawsuit. Unlike *Miner*, where damages were bifurcated, in the instant case each individual's unique claim must be addressed as the lawsuit goes forward. Very quickly, the individual issues will become the biggest problem, not some thorny legal question as was the case in *Miner*.

The class size in the case before us is also a consideration. In *Miner*, this court recoiled from the possibility of "hundreds of thousands or perhaps millions of individual cases," which it feared the circuit courts in Arkansas would be unable to handle. The *Miner* court concluded that class action was superior because it would be "more efficient" and "both parties benefitted." *Id.* As noted previously, there will almost certainly be fewer than sixty-five class members, and the major issue will be how many minutes each aggrieved worker would be compensated for. Given this court's liberal attitude toward offensive collateral estoppel, *see Mann v. Pierce*, 2016 Ark. 418, 505 S.W.3d 150, very little will be gained in terms of judicial efficiency after the first case is litigated. At any rate, it is unlikely that fewer than sixty-five cases would overwhelm the circuit courts in Pulaski County.

Finally, and perhaps most importantly, the AMWA has a fee-shifting provision. Ark. Code Ann. § 11-4-218(a). Accordingly, it will cost the workers nothing to vindicate their

rights to lawful compensation if Koppers has denied them the same. Spurious claims will at the same time be discouraged, and like any lawsuit, the economic realities of pursuing litigation will chasten Koppers from unreasonably refusing to pay its workers. In my view, justice would be more perfectly realized with individual claims proceeding, if necessary, to individual lawsuits.

I dissent.

*Quattlebaum, Grooms & Tull PLLC*, by: *E. B. Chiles IV*, *Joseph R. Falasco*, and *S. Katie Calvert*, for appellant.

*Holleman & Associates, P.A., by: John Holleman and Timothy A. Steadman*, for appellees.