Cite as 2022 Ark. 149

# SUPREME COURT OF ARKANSAS
No. CV–21–536

SHELTER MUTUAL INSURANCE
COMPANY

APPELLANT

V.

SAMUEL BAGGETT AND JANA LEE, ON
BEHALF OF THEMSELVES AND ALL
SIMILARLY SITUATED PERSONS AND
ENTITIES

APPELLEES

Opinion Delivered: June 23, 2022

APPEAL FROM THE PULASKI
COUNTY CIRCUIT COURT
[NO. 60CV-18-1542]

HONORABLE TIMOTHY DAVIS
FOX, JUDGE

AFFIRMED.

**RHONDA K. WOOD, Associate Justice**

This is a class action against an auto-insurance company. Plaintiffs were insureds and

incurred medical expenses because of car accidents. But the insurance company declined to pay

the plaintiffs for the full amount of billed medical expenses and instead simply reimbursed them

for the actual amount they owed their medical providers after all discounts had been applied.

Plaintiffs asserted this practice constituted breach of contract and unjust enrichment. The circuit

court certified a class action. We affirm because the court did not abuse its discretion in

concluding that the prerequisites of a class action had been satisfied.

I.  *Factual Background*

The lead plaintiff, Samuel Baggett, was injured in a car wreck and incurred medical

expenses. Baggett had medical-payments insurance coverage as part of his automobile coverage

with Shelter Mutual Insurance Company. The coverage had a $5000 policy limit. Although

Baggett's initial medical bills for his injuries exceeded $5000, Shelter issued him two checks totaling almost $2000. Shelter determined this amount equaled Baggett's out-of-pocket medical expenses. But Baggett contended Shelter owed him the entire $5000. He thus filed a class action against Shelter, alleging it had a practice of reducing its medical-payments coverage from the original billed amount to a discounted amount that embraced credits, write-offs, and payments from third parties like other medical insurance companies. Baggett asserted two causes of action: (i) breach of contract and (ii) unjust enrichment.

The other named plaintiff was Jana Lee. She also had a $5000 policy limit for medical-payments coverage from Shelter. As a result of a car wreck, Lee suffered a physical injury and incurred medical expenses of around $4000. But Shelter, Lee alleged, failed to pay the full amount. Like Baggett, Lee claimed this deficiency resulted from Shelter's policy and practice of illegally deducting other plan payments from its reimbursements.

The court agreed to certify a class action. The court defined the class, in relevant part, as follows:

> All Arkansas residents, including Plaintiffs and all similarly situated persons for the period from March 13, 2013 to the [to be determined by further order of the Court] (the "Class Period"), who have or had automobile insurance with medical payments coverage issued by Shelter and who requested a medical payment from Shelter as a result of a covered accident, and did not receive the full medical payment requested due to payments or adjustments made by another insurance plan or collateral source.

The court also issued findings of fact and conclusions of law. The court noted the lawsuit contained common questions, including the following:

- Whether Shelter engaged in a scheme to reduce its med pay coverage by taking into consideration other insurance plans?

- Whether Shelter's conduct constitutes a breach of contract?

- Whether Shelter's conduct violated Arkansas law?

2

- Whether the class is entitled to damages and, if so, the amount of such damages?

The court noted the claims originated from Shelter's alleged course of conduct, a predominating issue—namely, the following: "Can Shelter reduce its primary coverage for Medical Payment benefits under its Auto policies because medical payments or adjustments have been made by another insurance company or another collateral source?" The court cited an affidavit from a Shelter representative who estimated the class could be as large as fifteen thousand. The court also found that Baggett and Lee had typical claims and were adequate class representatives. Finally, the court noted a class action provided superior method of adjudication because it was more efficient than having each class member file separate lawsuits.

## II. *Law and Analysis*

Arkansas Rule of Civil Procedure 23 imposes six prerequisites for certification of a class-action complaint: (1) numerosity; (2) commonality; (3) typicality; (4) adequacy; (5) predominance; and (6) superiority. *Koppers, Inc. v. Trotter*, 2020 Ark. 354, at 3. Besides the requirements of Rule 23, the class definition must be "sufficiently definite" for a court to determine who falls inside the class; put another way, "the identity of the class members must be ascertainable by reference to objective criteria." *Teris, L.L.C. v. Golliher*, 371 Ark. 369, 373, 266 S.W.3d 730, 733 (2007) (cleaned up). Circuit courts have broad discretion over class certification, and we will not reverse a circuit court's decision to grant or deny class certification absent an abuse of discretion. *Gen. Motors Corp. v. Bryant*, 374 Ark. 38, 45, 285 S.W.3d 634, 640 (2008). Here, Shelter challenges every class-action requirement on appeal and argues that the class definition isn't readily ascertainable. We disagree and conclude the court did not abuse its discretion when it certified this case as a class action.

## A. Class Definition

Shelter argues the class cannot be readily ascertained because identifying each member requires a review of each member's claim file maintained by Shelter. This inquiry, Shelter argues, means determination of the class cannot be obtained by objective criteria. Shelter highlights that class members are those who have had their claims reduced "due to payments or adjustments made by another insurance plan or collateral source," a complicated inquiry that could have resulted from pre-existing conditions, unnecessary treatment, or otherwise unreasonable expenses.

Generally, we have noted problems with a class definition when it involved substantive merits issues or required complicated, fact-based, and often subjective inquiries. For example, we affirmed a circuit court's refusal to certify a class when membership involved five criteria that required the court to conduct an inquiry, in part, into a particular class member's intent. *See Ferguson v. Kroger Co.*, 343 Ark. 627, 633–34, 37 S.W.3d 590, 594 (2001) (finding that the class plaintiffs' "ability to define the class [was] all but insurmountable").

Likewise, in *State Farm Fire & Casualty Co. v. Ledbetter*, the class was defined as follows: "All those insureds of [State Farm] under Form FP7955 who have a property damage claim or who have had an unpaid property damage claim under said policy *that involves a common question of law or fact with the Plaintiff*." 355 Ark. 28, 36, 129 S.W.3d 815, 820–21 (2003) (emphasis added). As we held, the definition would force the circuit court to "inquire into the facts of each insured's case in order to determine whether that person is a suitable class member." *Id.* at 37, 129 S.W.3d at 821. And the definition failed to contain "objective criteria," instead tautologically encompassing all those whose claims involved a common question of law or fact

with the lead plaintiff. *See id*. This definition would have impermissibly required a substantive legal determination as part of deciding which class member was in or out.

But another insurance case, *Farmers Insurance Co. v. Snowden*, compares favorably with the class definition proposed here. There, the class was defined as those who (i) had auto insurance coverage with Farmers Insurance Company; (ii) made a claim for physical damage which included estimates for structural repair or paint work; (iii) received payments on the insurance exceeding $500; and (iv) did not receive payment for diminished value (i.e., depreciation). 366 Ark. 138, 141–42, 233 S.W.3d 664, 666 (2006). This class survived a class-definition challenge because to fall within the class, the court need only "ensure that the claimant had a specific coverage with Farmers, made a certain type of damage claim to their insured vehicle, received payment within a certain time frame, and did not receive any payment for diminished value." *Id*. at 148, 233 S.W.3d at 670.

Here, the class definition is not like the one in *Kroger*, where class membership depended on subjective intent and expectation. Nor is it like the class definition in *Ledbetter*, where the class required the court to conduct a cumbersome analysis whether each member had "common questions of law or fact with the Plaintiff." 355 Ark. at 36, 129 S.W.3d at 821. Instead, here, a class member can be determined by reviewing whether the requested payment and the received payment were different. We affirmed on a nearly identical fact pattern in *Snowden*. And this holds true even if the court must consider facts not contained in the insured's claim files with Shelter. *See Baptist Health v. Hutson*, 2011 Ark. 210, at 6, 382 S.W.3d 662, 667.

Last, Shelter claims that the class definition is problematic because it lacks an end date. But this open-date format occurs often. And we have addressed this issue before. When it was raised in *Asbury Automotive Group, Inc. v. Palasack*, we explained it was an issue of first

impression, and "neither party cite[d] this court to any law on the time boundaries for a potential class definition." 366 Ark. 601, 613, 237 S.W.3d 462, 471 (2006). The *Palasack* court then declined to reject the class definition for lack of an end date, explaining "it would fly in the face of judicial economy to close the class prematurely." *Id.* at 614, 237 S.W.3d at 471.

If class actions are to promote judicial economy, then prematurely trying to determine an end date at the outset of the case is counterintuitive. The circuit court recognized this by writing in the certification order that the end date would be "determined by further order of the court." This class will not remain open-ended forever. And we fully expect the court to close the loop as the case proceeds.

## B. Numerosity

Shelter argues next that the numerosity element hasn't been satisfied. It repeats the arguments above that the class cannot be objectively identified. It also argues proof was lacking about the number of people in the class. But this argument isn't well taken. Strict proof of numerosity isn't required: "The exact size of the proposed class and the identity of the class members need not be established to certify a class; instead, the numerosity requirement may be supported by common sense." *Lenders Title Co. v. Chandler*, 358 Ark. 66, 73, 186 S.W.3d 695, 699 (2004). The circuit court found the class size would contain at least one hundred members and that it may substantially exceed that number. Shelter's own director of litigation estimated the class could reach fifteen thousand. The circuit court did not abuse its discretion when it concluded these numbers satisfied the numerosity requirement.

## C. Adequacy

Shelter also argues that the class representatives aren't adequate. It argues Baggett's criminal convictions (he committed three felonies) bar him from serving as the class

6

representative. Shelter says Baggett has "credibility problems." It also contends Lee is an inadequate representative because she couldn't identify the policy language that supports her claim and doesn't understand her claim of unjust enrichment.

The adequacy requirement contains three components: "(1) the representative counsel must be qualified, experienced, and generally able to conduct the litigation; (2) that there be no evidence of collusion or conflicting interest between the representative and the class; and (3) the representative must display some minimal level of interest in the action, familiarity with the practices challenged, and ability to assist in decision making as to the conduct of the litigation." *Palasack*, 366 Ark. at 605, 237 S.W.3d at 465.

Here, both Lee and Baggett testified they would be willing to attend hearings and trials. They both said they had a basic understanding of what the case was about. The court heard their testimony and believed that both would be adequate representatives. As an appellate court, we decline to go behind the certification order and reweigh credibility.

And the bar to qualify as a class representative is low. This court has permitted a person with a mental illness to serve as class representative because no facts showed her inability to act in the class's best interest, her unfamiliarity with the lawsuit, or a misunderstanding of her duties. *Advance Am. Servicing of Ark., Inc. v. McGinnis*, 2009 Ark. 151, at 15, 300 S.W.3d 487, 496. Lee's inability here to understand an insurance contract or explain the contours of an unjust-enrichment claim does not bar her from being the class representative. The specifics of class-action litigation rest with the legal experts, which is why Rule 23 requires an experienced and qualified legal counsel. Instead, Lee only needs a "minimal level of interest in the action." And Shelter's primary support that Baggett's criminal history bars him from serving as class representative comes from federal cases, which are generally unpersuasive authority in this area.

*Infinity Healthcare Mgmt. of Ark., LLC v. Boyd*, 2019 Ark. 346, at 14, 588 S.W.3d 22, 31 (explaining that "federal cases are of limited value because we do not follow the rigorous analysis standard applied by federal courts to Rule 23 class certification").[1]

## D. Typicality

Shelter next argues that Baggett and Lee's claims were atypical of the class because the court ignored whether their claims were subject to unique defenses. These defenses include statute of limitations, lack of standing, and accord and satisfaction. Generally, the existence of affirmative defenses won't limit a class action so long as those defenses are "secondary" to the common question. *See Philip Morris Cos., Inc. v. Miner*, 2015 Ark. 73, at 13, 462 S.W.3d 313, 321 (holding affirmative defenses based on the statute of limitations, failure to mitigate damages, and the voluntary-payment rule were secondary to the common questions).

But Shelter cites *BPS v. Richardson* for support that the circuit court had to make detailed written findings about each defense. 341 Ark. 834, 20 S.W.3d 403 (2000). But *BPS* raised unique factual circumstances. That action arose out of an explosion at a chemical plant. The class first included employees at the plant or their spouses. The class then ballooned to around sixteen thousand and included everyone who had been exposed to toxic chemicals emitted from the explosion. We noted two of the class representatives were chemical-plant employees with remedies limited to workers'-compensation benefits, thus making them subject to certain defenses absent for other class members. We held that the court, on remand, should make specific findings on this point.

---

[1]Shelter also relies on a federal case to argue that Lee and Baggett conflict with the remaining class because they no longer have Shelter insurance; if they prevail, premiums *might* increase for existing insureds. This issue about increased costs is speculative and goes to the merits. *See Rosenow v. Alltel Corp.*, 2010 Ark. 26, at 13, 358 S.W.3d 879, 888.

The defenses Shelter raises here are more like those that are "secondary" to the common question. Shelter's liability could be established (or not) for all class members because of the common practice it applies to every policy holder. Lee and Baggett's claims are typical because they "arise from the same wrong allegedly committed against the class." *BNL Equity Corp. v. Pearson*, 340 Ark. 351, 358, 10 S.W.3d 838, 842 (2000). The class and its representatives here do not have the employee/nonemployee split found in *BPS*, so its reasoning does not control here.

## E. Commonality

Shelter also challenges the court's ruling on commonality. Basically, Shelter says no common questions exist because Shelter will succeed on the merits. It cites one case for the proposition that insureds cannot recover the difference between what the providers billed and what they accepted as full satisfaction of the debt. *See Crockett v. Shelter Mut. Ins. Co.*, 2019 Ark. 365, 589 S.W.3d 369. They also cite another case for the proposition that insureds are not entitled to double recovery. *See Aetna Ins. Co. v. Smith*, 263 Ark. 849, 568 S.W.2d 11 (1978).

Shelter may indeed be correct, but we cannot deny a common question exists simply because there may be a common answer. This argument turns on the merits. Our law is clear that class certification has nothing to do with the merits of the claim: "Our focus is whether the requirements of Rule 23 are met and it is totally immaterial whether the petition will succeed on the merits or even if it states a cause of action." *Philip Morris*, 2015 Ark. 73, at 3, 462 S.W.3d at 316. And we have routinely found that a common question exists when the complaint identifies a common "scheme" or uniform policy that plaintiffs allege applies to every class member. For example, we found that a common question existed about a business's policy of

9

requiring employees to don and doff protective gear without compensation,[2] about a city's policy and representations to police officers,[3] and about a company's policy about vacation benefits.[4] Similarly, whether Shelter engaged in a scheme to reduce reimbursements to its insureds and whether the scheme constituted a breach is a question common to all class members. We affirm on this point.

## F. Superiority and Predominance

Last, Shelter challenges the court's ruling that a class action would be superior and that common questions predominate. These arguments address the same underlying concerns, so we address them together. *Koppers*, 2020 Ark. 354, at 9 ("The superiority requirement is closely related to predominance."). Shelter argues that individualized issues about each class member's particular claim—for example, whether a class member even has standing to make a claim— would make class-wide adjudication impossible. For this same reason, Shelter argues, the class action would not be a superior method to resolve each class member's claim.

These arguments do not convince us that the court abused its discretion when it concluded that common issues predominated and the class-action mechanism was superior. Whether Shelter's policy and practice breached the contract or caused unjust enrichment predominates over individual questions like lack of standing and other affirmative defenses. This is because the focus of the predominance inquiry is not an individual's right to recover, but the

---

[2]*Koppers*, 2020 Ark. 354, at 5.

[3]*City of Conway v. Shumate*, 2017 Ark. 36, at 7, 511 S.W.3d 319, 325.

[4]*Indus. Welding Supplies of Hattiesburg, LLC v. Pinson*, 2019 Ark. 325, at 8, 587 S.W.3d 540, 547.

defendant's underlying liability. *Simpson Hous. Sols., LLC v. Hernandez*, 2009 Ark. 480, at 18, 347 S.W.3d 1, 13. And the class-action mechanism provides a superior way to adjudicate this issue, which can be resolved in a single forum rather than in multiple lawsuits. *Philip Morris*, 2015 Ark. 73, at 14, 462 S.W.3d at 321. Given the broad discretion afforded circuit courts in this area, we find that the circuit court did not abuse its discretion in certifying the class.

Affirmed.

KEMP, C.J., and BAKER and WOMACK, JJ., dissent.

**KAREN R. BAKER, Justice, dissenting.** I dissent from the majority opinion because the class definition in this case does not comply with Rule 23 of the Arkansas Rules of Civil Procedure. Instead, I would reverse and remand this matter for the class to be decertified.

In *State Farm Fire & Casualty Co. v. Ledbetter*, 355 Ark. 28, 35–36, 129 S.W.3d 815, 820 (2003), we stated,

> The definition of the class to be certified must first meet a standard that is not explicit in the text of Rule 23, that the class be susceptible to precise definition. This is to ensure that the class is neither "amorphous," nor "imprecise." Concurrently, the class representatives must be members of that class. Thus, before a class can be certified under Rule 23, the class description must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class. Furthermore, for a class to be sufficiently defined, the identity of the class members must be ascertainable by reference to objective criteria.
>
> [*Ark. Blue Cross & Blue Shield v. Hicks*, 349 Ark. 269, 280–81, 78 S.W.3d 58, 64–65 (2002)] (quoting *Ferguson v. Kroger Co.*, 343 Ark. 627, 631–32, 37 S.W.3d 590, 593 (2001) (quoting 5 Jeremy C. Moore, *Moore's Federal Practice* § 23.2(1) (Matthew Bender 3d ed. 1997))).

"We have repeatedly held that neither the trial court nor the appellate court may delve into the merits of the underlying claim when deciding whether the requirements of Rule 23 have been met. *The Money Place v. Barnes*, 349 Ark. 518, 78 S.W.3d 730 (2002); *Fraley* [*v. Williams Ford Tractor & Equip. Co.*], 339 Ark. 322, 5 S.W.3d 423 (1999); *see also Capital One*

11

*Bank v. Rollins*, 106 S.W.3d 286 (Tex. App. 2003) (holding that a class definition was defective where it required a determination of the merits before the court could ascertain the existence of a class)." *Id.* at 37, 129 S.W.3d at 821. Additionally, we have upheld a class definition that identified the class as all certified teachers who performed particular duties while working for a certain school district from "August 1998 to the present." *Van Buren Sch. Dist. v. Jones*, 365 Ark. 610, 614–15, 232 S.W.3d 444, 448–49 (2006). This court has also upheld class definitions that specify the class period from a particular date to the date that notice was provided to the class. *See Hicks*, 349 Ark. 269, 288, 78 S.W.3d 58 at 69–70.

Here, the order at issue granting class certification provided in pertinent part:

> All Arkansas residents, including Plaintiffs and all similarly situated persons for the period from March 13, 2013, to the [**insert opt out deadline**] [with a handwritten note stating, "TO BE DETERMINED BY FURTHER ORDER OF THE COURT" and initialed by the judge] (the "Class Period"), who have or had automobile insurance with medical payments coverage issued by Shelter and who requested a medical payment from Shelter as a result of a covered accident, and did not receive the full medical payment requested due to payments or adjustments made by another insurance plan or collateral source.

(First alteration in the original.)

As the class is presently defined, the circuit court would be required to (1) analyze each insured's file to determine if a request for medical payment was made as a result of a 'covered accident' and determine if the claim was made pursuant to a 'covered accident' under the policy; (2) analyze each insured's file to determine which insureds did not receive the full medical payment requested; and (3) analyze each insured's file to determine whether the lack of full payment was the result of payments or adjustments made by another insurance plan or collateral source and possibly contact providers to determine if adjustments were made— in other words, the circuit court would be required to review each insured's file to determine "why" full

payment was not made. In addition, Shelter may not be aware whether a provider made an adjustment and Shelter would have to contact individual providers. Further, the circuit court cannot ascertain the closure of the class members because the class definition lacks an end date for the class period. Accordingly, contrary to the majority's position, the class members are not ascertainable by reference to objective criteria.

Because the circuit court would be required to inquire into the facts of each insured's case in order to determine whether that person is a suitable class member and the class definition lacks an end date of the class period, the class members are not ascertainable by reference to objective criteria and the order fails to comply with the mandatory requirements contained in Rule 23. Accordingly, I dissent from the majority opinion and would reverse the circuit court's order certifying the class and remand this matter with instructions to decertify the class.

KEMP, C.J., and WOMACK, J., join.

*Friday, Eldredge & Clark, LLP*, by: *Kevin A. Crass* and *Martin A. Kasten*; and *Munson, Rowlett, Moore & Boone, P.A.*, by: *Elizabeth Fletcher* and *Sarah E. Greenwood*, for appellant.

*Thrash Law Firm, P.A.*, by: *Thomas P. Thrash* and *Will T. Crowder*; and *Taylor A. King, P.A.*, by: *Kenneth "Rusty" Mitchell*, for appellees.