Cite as 2023 Ark. 151

# SUPREME COURT OF ARKANSAS
**No.** CV-23-42

|  |  |
|---|---|
| ST. VINCENT MEDICAL GROUP<br><br>APPELLANT<br><br>V.<br><br>FORD BALDWIN, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED<br><br>APPELLEES | **Opinion Delivered:** October 26, 2023<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CV-20-5603]<br><br>HONORABLE MORGAN E. WELCH, JUDGE<br><br><ins>REVERSED AND REMANDED.</ins> |

**RHONDA K. WOOD, Associate Justice**

In this class-action lawsuit, Ford Baldwin alleged that St. Vincent Medical Group violated the Patient Right-to-Know Act, Ark. Code Ann. §§ 20-6-201 et seq. Baldwin claims that St. Vincent, after terminating his primary-care physician, Dr. Anderson, failed to provide Dr. Anderson with a list of his patients or to send his patients notice of his new location. The circuit court certified a class action. We reverse and remand because the court abused its discretion in concluding that the predominance prerequisite of a class action had been satisfied.

## I. *Background*

### A. Patient Right-to-Know Act

Ford Baldwin filed this class action lawsuit against St. Vincent under the Patient Right-to-Know Act, Ark. Code Ann. §§ 20-6-201 et seq. The Act was established to provide medical patients with "continuity of care with their healthcare providers." Ark

Code Ann. § 20-6-202(a)(1). Its purpose is "to remove and prevent impediments to patients' maintaining continuity of care and keeping their treatment relationship with their chosen healthcare provider." Ark. Code Ann. § 20-6-202(b). Section 204(a) of the Act states that if a healthcare provider has made a new practice location available to an entity the entity cannot: (1) mislead any patient about the health care provider's new practice location or contact information or (2) fail to provide a patient with the health care provider's new practice location or contact information when requested. Ark. Code Ann. § 20-6-204(a)(1)–(2). Section 204(b) states that when requested by a healthcare provider who is relocating his practice, an entity shall within twenty-one days (1) provide the healthcare provider with a list of the provider's existing patient names and addresses or (2) send notice with the new practice location to the provider's existing patients. Ark. Code Ann. § 20-6-204(b)(1)(A)–(B) (Repl. 2018). The Act further provides that an "affected patient" may seek injunctive relief for violations under the Act. Ark. Code Ann. § 20-6-206(a).

## B. Class Claims

In December 2019, St. Vincent terminated Baldwin's primary care physician, Dr. Anderson. Dr. Anderson allegedly sent St. Vincent his new business address and asked it either to provide him with a list of his patients' names and addresses or to send his patients notice of his new practice location under the Act. Baldwin himself never requested Dr. Anderson's new contact information from St. Vincent. In fact, Baldwin had his medical records sent to Dr. Anderson's new location before Dr. Anderson notified St. Vincent of his new location.

2

Baldwin's class-action complaint alleged that St. Vincent violated the Act and demanded injunctive relief as well as liquidated damages. St. Vincent filed a motion to dismiss and a motion for summary judgment arguing that under these circumstances it owed no duty to Baldwin to provide Dr. Anderson with his name and address or to send him notice of Dr. Anderson's new location under the Act. In other words, St. Vincent argued that any failure to respond to a letter from Dr. Anderson could result in relief only to Dr. Anderson—not his patients. St. Vincent also argued that Baldwin is not an "affected patient" under section 206(a) of the Act because he did not personally request Dr. Anderson's new contact information from St. Vincent and he knew Dr. Anderson's new location before Dr. Anderson sent the letter.

The circuit court rejected St. Vincent's arguments and denied its motion to dismiss and motion for summary judgment. After denying these motions, the court held a hearing on class certification and ordered certification. The class-certification order stated, "By virtue of having been an Existing Patient of Dr. Anderson and not receiving notice from St. Vincent within the statutory prescribed period, the Court has already made a Finding, and it reiterates it here: Plaintiff is an 'affected patient' as defined by the Act." The circuit court defined the class as:

> [t]he 2,143 people identified by Defendant in response to Interrogatory 14 as Existing Patients, as defined by the Arkansas Patient-Right-to-Know Act, of Dr. Leslie Anderson on February 3, 2020.

St. Vincent filed this interlocutory appeal under Ark. R. App. P.–Civil 2(a)(9).

3

## II. *Law and Analysis*

Arkansas Rule of Civil Procedure 23 imposes six prerequisites for certification of a class-action complaint: (1) numerosity; (2) commonality; (3) typicality; (4) adequacy; (5) predominance; and (6) superiority. *Shelter Mut. Ins. Co. v. Baggett,* 2022 Ark. 149, at 3, 646 S.W.3d 106, 111–12. Besides the Rule 23 requirements, the class definition must be "sufficiently definite" for a court to determine who falls inside the class. *Id.* Circuit courts have broad discretion over class certification, and we will not reverse a circuit court's decision to grant or deny class certification absent an abuse of discretion. *Id.*

On appeal of class certification, we do not delve into the merits of the underlying claim. *Advance Am., Cash Advance Ctrs. of Ark., Inc. v. Garrett,* 344 Ark. 75, 79, 40 S.W.3d 239, 242 (2001). We have explained this to mean that a decision on whether to certify the class is not one of whether the plaintiff will prevail in the cause of action. *Georgia-Pacific Corp. v. Carter,* 371 Ark. 295, 299, 265 S.W.3d 107, 110 (2007).

First, St. Vincent argues that the circuit court erroneously certified the class action because the order certifying the class was founded on an erroneous interpretation of the Act. Specifically, it argues that the circuit court erroneously concluded that all of Dr. Anderson's "existing patients" were "affected patients." According to St. Vincent, under the Act, only patients who personally requested Dr. Anderson's new information and were misled or did not receive a response were affected and entitled to relief. Alternatively, it argues that even if the Act were construed such that patients could be affected by a health-care provider's failure to respond to a physician's request, only patients who were actually affected would be class plaintiffs. Baldwin responds that this court cannot review the circuit court's

interpretation of the Act because we cannot look at the merits of the case on an interlocutory appeal of a class-certification order.

Baldwin's argument has value, but only up to a point. Indeed, on appeal of a class-certification order, we do not delve into the merits of the underlying claims. *ChartOne, Inc. v. Raglon*, 373 Ark. 275, 283 S.W.3d 576 (2008). Yet we have held that we will look at the elements of the cause of action in reviewing commonality, and by extension, we must also ensure the class is properly defined. *See Union Pac. R.R. v. Vickers*, 2009 Ark. 259, at 12, 308 S.W.3d 573, 580 (reviewing the elements of the cause of action to determine commonality). Just as the circuit court did, this court as an initial matter must also determine who is an affected patient under the Act. As we stated previously, "consideration of the elements of the underlying claim is important to determine whether any questions are common to the class and whether those questions will resolve the claim." *Williamson v. Sanofi Winthrop Pharm., Inc.*, 347 Ark. 89, 98, 60 S.W.3d 428, 433 (2001).

Both the circuit court and the appellate court should avoid delving into the merits of the underlying claim when deciding whether the Rule 23 requirements have been satisfied. *Garrett,* 344 Ark. 75, 40 S.W.3d 239. But in *ChartOne*, 373 Ark. at 284-85, 283 S.W.3d at 583-84, this court recognized that this may not always be possible. In *ChartOne*, the defendant challenged class certification, arguing that the class was founded on the court's erroneous interpretation of a statute. *Id*. We explained that the portion of the class definition that was subject to dispute was "not limited to section 16-46-106." *Id*. at 284, 283 S.W.3d at 583. Thus, we avoided interpreting the statute because it was "immaterial to our review of the requirements of Rule 23." *Id*. at 285, 283 S.W.3d at 584. While we went on to

emphasize the court shall not get to the merits, and we don't here, absent the majority of the *ChartOne* opinion being irrelevant, it must stand for recognizing there might be a case where statutory interpretation would be essential to review of class certification.

This is that case. We cannot overlook the circuit court's findings in its certification order and class definition. Concurrently with certifying the class, the circuit court concluded that Baldwin was an affected patient. The circuit found that "Plaintiff is an 'affected patient' as defined by the Act." This decision led to defining the class as including all "existing patients." Unlike in *Chart One*, where the class claims were based on several causes of action, the class claims here rest exclusively on the Act. This makes the circuit court's interpretation of the Act material to our review of Rule 23's requirements. In fact, this decision drives our review of the class definition and whether the individual claims or the class claims predominate. We cannot review the appropriateness of the circuit court's class-certification order without scrutinizing its initial conclusion that all existing patients were affected patients.

And this interpretation of the Act was erroneous. The Act defines an "existing patient" as "one who is seen for a medical diagnosis or treatment, or both, by a healthcare provider within the previous twelve (12) months…" Ark. Code Ann. § 20-6-203(2)(A) (Repl. 2018). But the Act does not define an "affected patient," the term intended to define those patients impacted by noncompliance with the Act. The legislature chose two terms and intended for each to encompass different populations. As we have stated, we construe statutes to give every word meaning to avoid leaving any word superfluous. *DaimlerChrysler Corp. v. Smelser*, 375 Ark. 216, 223, 289 S.W.3d 466, 473 (2008) (explaining that if the

legislature used both costs and expenses that it must have meant to distinguish between the two). Accordingly, existing patients and affected patients are not synonymous terms—not all "existing patients" were "affected patients" as the circuit court erroneously concluded. Rather, we find that "affected patients" means those "existing patients" who were harmed because of the healthcare provider's failure to provide the patient with his or her physician's new practice location or misled the patient about the new practice. Ark. Code Ann. § 20-6-204(a).

We must reach this legal conclusion about the Act's plain language because the circuit court did, and it is foundational to our review of the class-certification order. But this does not mean that we have unnecessarily delved into the merits of Baldwin's claim. For example, it remains an open question whether St. Vincent engaged in conduct that violated the Act and whether any patient could prevail.

With this understanding in mind, we now turn to St. Vincent's challenge to the predominance requirement. Under Rule 23(b), an action may be maintained as a class action if the court finds that questions of law or fact common to the members of the class predominate over any questions that affect only individual members. *Philip Morris Cos., Inc. v. Miner*, 2015 Ark. 73, at 4, 462 S.W.3d 313, 316-17. Thus, the starting point in examining predominance is whether a common wrong has been alleged against the defendant. In making this determination, we do not merely "compare the number of individual claims versus common claims." *Id*. at 6, 462 S.W.3d at 317. Instead, we must decide whether the issues common to all plaintiffs "predominate over" the individual issues. *Id*. The mere fact

that individual issues and defenses may be raised regarding recovery of damages cannot defeat class certification. *Id*.

In *Arthur v. Zearley*, 320 Ark. 273, 895 S.W.2d 928 (1995), we held that class-certification was improper because there was no common issue, and we recognized that individual issues of informed consent and causation were the essence of the claims of each separate plaintiff. Similarly, in *Baker v. Wyeth-Ayerst Laboratories Division*, 338 Ark. 242, 992 S.W.2d 797 (1999), we affirmed the denial of a class certification order because there were few, if any, global or common issues that could be resolved at the certification stage.

This class-certification order identified common questions, including whether St. Vincent violated the rights of Dr. Anderson's patients under the Act and whether the class members were entitled to relief. As for the common question of whether St. Vincent violated patients' statutory rights, the circuit court concluded that "plaintiff has identified a common course of conduct that affected all members of the class." We disagree.

Baldwin's claim was based on St. Vincent's failure to respond to Dr. Anderson's letter. Yet St. Vincent's response to this letter from Dr. Anderson is not necessarily representative of its responses to requests from individual patients. Under the Act, patients could have been affected only if St. Vincent misled them or failed to provide Dr. Anderson's new practice location or contact information upon request. Said another way, a patient would not have been affected, and therefore would not be a class member, if he requested and received Dr. Anderson's new practice information from St. Vincent directly.

Baldwin pleaded that the class members' commonality is that they were existing patients of Dr. Anderson's when St. Vincent terminated him. But as stated above, existing

8

patients were not necessarily affected patients. And in order to establish liability, the court would have to determine which of Dr. Anderson's existing patients were affected. This would require individual inquiries concerning whether a potential class member directly requested Dr. Anderson's new practice information from St. Vincent and whether and how the hospital responded to this request. The court would have to determine whether St. Vincent failed to respond to any one patient's request or if it misled another patient. Because no one set of operative facts can establish whether St. Vincent violated the Act as pled, we conclude that these individual fact questions predominate over common questions. *See Union Pac. R.R.,* 2009 Ark. 259, 308 S.W.3d 573.

Accordingly, we reverse and remand the class certification order.

Reversed and remanded.

KEMP, C.J., and BAKER and HUDSON, JJ., dissent.

**KAREN R. BAKER, Justice, dissenting.** Ironically, on five separate occasions, the majority acknowledges that this court does not delve into the merits of the underlying claim on an appeal of a class certification. However, this is precisely what the majority does in its opinion. Because I cannot agree with the majority's decision to reverse and remand the class-certification order, I dissent.

The majority's erroneous decision is founded on an inferential leap made in reliance on dicta in *ChartOne, Inc. v. Raglon*, 373 Ark. 275, 283 S.W.3d 576 (2008). In my view, the majority has ignored decades of precedent and simply chooses to delve into the merits in order to reverse and remand the class-certification order. The majority states that "[w]hile we went on to emphasize the court shall not get to the merits, and we don't here, absent

9

the majority of the *ChartOne* opinion being irrelevant, it must stand for recognizing there might be a case where statutory interpretation would be essential to review of class certification." I disagree. *ChartOne* does not stand for the proposition that the majority has now contrived. In response to ChartOne's invitation to review the circuit court's interpretation of Arkansas Code Annotated section 16-46-106, Raglon responded that the circuit court properly interpreted the statute at issue "but, in any event, the issue of whether the statute allows such a charge or not is not a basis for the class definition." *Id.* at 284, 283 S.W.3d at 583. We went on to explain that the class definition was not limited to section 16-46-106 and was therefore immaterial to our review of the Rule 23 requirements. However, we explained that, ultimately, the statutory-interpretation issue "goes to the underlying merits of this case. As recognized by ChartOne, it is improper for this court to consider the merits of the underlying lawsuit in reviewing the appropriateness of a class-certification order. *See Mittry v. Bancorpsouth Bank*, 360 Ark. 249, 200 S.W.3d 869 (2005)." *Id.* at 284–85, 283 S.W.3d at 583.

Here, the circuit court certified the class definition as follows:

The 2,143 people identified by Defendant in response to Interrogatory 14 as Existing Patients, as defined by the Arkansas Patient-Right-to-Know Act, of Dr. Leslie Anderson on February 3, 2020.

Thus, in order to sustain the class as defined—"existing patients"—we need not review the circuit court's statutory interpretation. To do so would force us to delve into the merits, which the majority has improperly done today.

Further, I take issue with the majority's statement that the circuit court's interpretation of the Act "controls our review of the class definition and whether the

10

individual claims or the class claims predominate." I disagree. As stated in *ChartOne*, we were not persuaded by "the proposition that we may delve into the merits in order to analyze the factors under Rule 23." *Id*. at 285, 283 S.W.3d at 583–84. Thus, despite the majority's decision to do so, it is inappropriate to delve into the merits in order to analyze the predominance requirement.

Consistent with our decades of precedent, I dissent from the majority's decision to delve into the merits of the underlying claim and reverse and remand the certification order.

KEMP, C.J., and HUDSON, J., join.

*Munson, Rowlett, Moore and Boone, P.A.*, by: *Tim Boone, Sarah Greenwood*, and *Zachary Hill*, for appellant.

*Carney Bates & Pulliam, PLLC*, by: *Randall K. Pulliam* and *Courtney E. Ross*; *Campbell & Grooms*, by: *Kendel W. Grooms, Donald K. Campbell*, and *Parker L. Spaulding*; and *Kelly Law Firm, P.A.*, by: *Jerry Kelly*, for appellee.

*Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.*, by: *Megan D. Hargraves* and *Cara D. Butler*, brief of Arkansas Hospital Association as amicus curiae in support of appellant.